SAWYER *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF NORTH CAROLINA.

No. 553. Argued April 4, 5, 1906.—Decided April 30, 1906.

The passage of the act of July 20, 1840, 5 Stat. 394, and of § 800, Rev. Stat.,
granting peremptory challenges to the Government in criminal cases,
has not taken away the right to conditional or qualified challenges when
permitted in the State, and where it has been adopted by the Federal
court as a rule or by special order. The exercise of the right is under
supervision of the court which should not permit it to be used unreason-
ably or so as to prejudice defendant. It is not an unreasonable exercise
of the privilege where, notwithstanding its exercise, neither the Govern-
ment nor the defendant exhausted all of their peremptory challenges.
Where defendant takes the stand in his own behalf he waives his consti-
tutional privilege of silence and the prosecution has the right to cross-

[1] This case was argued simultaneously with *First National Bank* v.
*Staake;* for names of counsel see p. 144, *ante.*

examine him upon his evidence in chief with the same latitude as though he were an ordinary witness as to circumstances connecting him with the crime, and even if, as claimed in this case, the subject matter of the cross-examination has no tendency to connect the witness with the crime if it is plain that there is no injury the exception is not available.

While a remark by the District Attorney in summing up that "a man under such circumstances who could drink a cup of coffee ought to be hung on general principles," is improper, if, on protest of defendant's counsel, the court stops the District Attorney, who apologizes and withdraws the remark, an exception by defendant is frivolous and the court is not open to censure for so describing it.

There is no reversible error in the court stating in a trial for murder of several persons that defendant was not charged with the murder of a person whose name is stated in the bill as having been murdered, the court also saying that if he was so charged there was no evidence to support the charge.

THE writ of error in this case brings before this court a judgment of conviction of murder, rendered in the Circuit Court of the United States for the Eastern District of North Carolina.

The plaintiffs in error were indicted at the fall term, 1905, of the United States District Court for the Eastern District of North Carolina, Wilmington Division, for the murder, by shooting, on the twenty-eighth day of October, 1905, of E. R. Rumill, captain; John T. Hall, mate; John Falbe, cook; C. L. Smith, engineer, and John S. Coakley, seaman, committed on the high seas and within the jurisdiction of the court wherein the indictment was found, and on board of the American vessel called the Harry A. Berwin. The indictment alleged that after the shooting the deceased were thrown into the sea. Upon the trial of the plaintiffs in error in November, 1905, in the United States Circuit Court for the Eastern District of North Carolina, to which court the indictment had been duly transferred for trial, they were convicted of the murder of the first four named in the indictment. The court told the jury that the defendants were not charged with killing Coakley, and if charged in the bill there was no evidence to support the charge.

There is no question made as to the sufficiency of the indictment or of the jurisdiction of the court.

It appeared on the trial that the plaintiffs in error were part of the crew, and, together with one Henry Scott, who was also one of the crew, were the only living persons found on the Berwin, when they were arrested by the crew of a small boat, that was put off from a schooner called the Blanche H. King, which was then proceeding on a voyage up the coast from Brunswick, Georgia, to Philadelphia, Pennsylvania, and had arrived at a point about thirty-two miles southwest from Cape Fear bar. The attention of Captain John W. Taylor of the schooner was directed about nine o'clock in the evening in the month of October, 1905, to a vessel just ahead of him, on account of the manner in which she was carrying her lights, and because she was right in the track of his own vessel. He sent a small boat, manned by several seamen, to the vessel (which proved to be the Berwin), and the boat brought back the plaintiffs in error and Scott, who, on being brought to the deck of the vessel and telling their story, were put in irons by direction of the captain, who then steered his vessel for the nearest port, which was Southport, North Carolina, where the men were delivered to the Federal authorities. Upon the trial of the indictment which was found against the plaintiffs in error, the man Scott was called as a witness, and swore to the murder by the plaintiffs in error while the vessel was at sea, and on or about October 28, 1905.

Scott was subsequently indicted alone for the murders, and was also convicted, the plaintiffs in error being witnesses against him, and they testified that he committed the murders. He has been reprieved by the President, so that he may be again used as a witness against the plaintiffs in error in case of a new trial being granted to them.

*Mr. Corcoran Thom,* with whom *Mr. George Roundtree* and *Mr. Henry P. Blair* were on the brief, for plaintiffs in error:

If the English practice with respect to challenges was ever

adopted in this country, it was not applicable after the passage of the acts of March 3, 1865, and June 8, 1872, in the United States courts. *United States v. Butler,* 1 Hughes, 457; *Seely v. State,* 1 Georgia, 213.

The practice in North Carolina does not govern in the Federal courts under the crimes act. *United States* v. *Shackelford,* 18 How. 588.

The cross-examination was allowed upon subjects in no way connected with the examination-in-chief and the accused was prejudiced by the attempt to impeach his character. Greenleaf on Evidence, § 445; *Fitzpatrick* v. *United States,* 178 U. S. 304.

So long as the cross-examination is carried on with reasonable fairness, to test the credibility of the witness, it is permissible, but the moment questions are asked concerning facts touching the witness's character, which are irrelevant to the facts in issue, for any other purpose than to affect his credibility or which manifestly do not bear on the subject of credibility, the right of cross-examination is abused, and on objection should be restrained within legitimate limits. *Buel* v. *State,* 104 Wisconsin, 132.  See also *Baily* v. *State,* 67 Mississippi, 133; *State* v. *Carson,* 66 Maine, 116; *People* v. *Pinkerton,* 78 Michigan, 110; *State* v. *Gotfreedson,* 24 Washington, 398; *State* v. *Hale,* 156 Missouri, 102; *Saylor* v. *Commonwealth,* 97 Kentucky, 184; *Nix* v. *State,* 74 S. W. Rep. 764; Thompson on Trials, § 653; *Bullock* v. *State,* 65 N. J. L. 557; *State* v. *Barker,* 68 N. J. L. 19.

The latitude of cross-examination in North Carolina seems to be broader than in most other jurisdictions in America, *State* v. *Pancoast,* 35 L. R. A. 518, 519, and yet in *State* v. *Traille,* 121 N. Car. 674, it is definitely stated that such questions as those which were put to Adams on cross-examination must be confined solely to contradiction or impeachment and are not to affect the guilt or innocence of the accused.

It is error to allow the cross-examination of an accused who has taken the stand in his own behalf which could serve no other purpose than to prejudice him before the jury. *Allen*

v. *United States*, 115 Fed. Rep. 3; *Howard* v. *People*, 96 Illinois,
492; *Gifford* v. *People*, 83 Illinois, 210; *Buel* v. *State*, 104
Wisconsin, 132; *People* v. *Molineaux*, 62 L. R. A. 345, 347,
notes. Even if such questions which had been put to Adams
on cross-examination were answered in the negative, it is still
error to allow the questions to be propounded. *Bates* v. *State*,
60 Arkansas, 450; *Gale* v. *People*, 26 Michigan, 161; *People*
v. *Wells*, 100 California, 459. It can hardly be controverted
that any other witness would not be allowed to testify as to
the matter concerning which Adams was cross-examined.
*Smith* v. *United States*, 161 U. S. 85. See also *Morrison* v.
*Pettybone*, 87 Fed. Rep. 320.

The words of the district attorney complained of were prejudi-
cial to the defendants and the comments of the court only served
to disparage counsel for defendant in the minds of the jury.

*The Solicitor General* for the United States:

The right of the prosecution to stand jurors aside temporarily
has always been widely recognized. It originated with the Stat-
ute of 33d Edw. I, which took away the unlimited peremptory
challenges by the Crown and required the prosecution to
challenge for cause, although the cause need not be shown
until the panel was gone through. If the panel is exhausted
before the jury is complete, jurors set aside must be called
and must serve unless challenged by either side. *United
States* v. *Marchant*, 12 Wheat. 480; *United States* v. *Wilson*,
1 Baldw. 82; *United States* v. *Douglass*, 2 Blatchf. 207; *State*
v. *Benton*, 19 N. Car. 196. The rule is not changed by the
allowance of peremptory challenge to the prosecution. *War-
ren* v. *Commonwealth*, 1 Wright, 45; *Haines* v. *Commonwealth*,
100 Pa. St. 317; *Smith* v. *Commonwealth*, 100 Pa. St. 324;
*Rudy* v. *Commonwealth*, 128 Pa. St. 500 ; *Commonwealth* v.
*O'Brien*, 140 Pa. St. 555; *State* v. *McNinch*, 12 S. Car. 89;
*State* v. *Stephens*, 13 S. Car. 285. The principle has been
firmly established in North Carolina from an early day. *State*
v. *Craton*, 6 Ired. 164; *State* v. *Arthur*, 13 N. Car. 217; *State*

v. *Benton,* 19 N. Car. 196; *State* v. *Bone,* 52 N. Car. 121; *State* v. *Jones,* 88 N. Car. 1671; *State* v. *Gooch,* 94 N. Car. 982; *State* v. *Hensley,* 94 N. Car. 1021; *State* v. *Sloan,* 97 N. Car. 499. The Federal practice in this respect should conform to state law. *United States* v. *Shackleford,* 18 How. 588; *Lewis* v. *United States,* 146 U. S. 370, 379; *Pointer* v. *United States,* 151 U. S. 396, 407.

The rule is reasonable and is subject to the discretion of the court to prevent the right from being exercised unreasonably. It was not exercised unreasonably in this case; defendants were in no way prejudiced; neither the Government nor the defense had exhausted their peremptory challenges when the jury was impaneled; the prisoners obtained a trial by a fair and impartial jury from those who remained on the panel, which is all they were entitled to. *Northern Pacific R. R. Co.* v. *Herbert,* 116 U. S. 642, and cases cited; *Hayes* v. *Missouri,* 120 U. S. 68, 71; *Brown* v. *New Jersey,* 175 U. S. 172, 175.

The challenge to the array came too late. Such objections must be made before the jury is impaneled. *United States* v. *Butler,* 1 Hughes, 457; *Gropp* v. *People,* 67 Illinois, 154; *Mueller* v. *Rebhan,* 94 Illinois, 147; *Goodman* v. *Goetz,* 36 N. Y. 731; *Jackson* v. *State,* 4 Tex. App. 292; *State* v. *Douglass,* 63 N. Car. 500. In cases where jurors have been summoned irregularly it has been held that challenge to the array is not tenable where there was a plea of not guilty, where defendants have not exhausted their peremptory challenges, and where no positive injury has resulted. *United States* v. *Cornell,* 2 Mason, 91; *Commonwealth* v. *Seybert,* 4 Pa. Co. Ct. Rep. 152; *Goodland* v. *LeClair,* 78 Wisconsin, 176; *People* v. *Burgess,* 153 N. Y. 561; *Wilhelm* v. *People,* 72 Illinois, 468; *People* v. *Madison Co.,* 125 Illinois, 334; *State* v. *McElmurray,* 3 Strobh. L. (S. Car.) 337; *Franklin* v. *State,* 34 Tex. App. 89; *State* v. *Clyburn,* 16 S. Car. 375; *State* v. *Price,* 10 Rich. (S. Car.) 356; *State* v. *McQuaige,* 5 S. Car. 429.

The court performed its whole duty in the matter of the objectionable remarks of the district attorney by interposing

and admonishing him. 1 Thompson on Trials, § 964; *Graves* v. *United States*, 150 U. S. 118; *Hall* v. *United States*, 150 U. S. 76. There are many cases showing the indulgence extended by courts to extravagant declamation and exaggeration by counsel in argument, and the rule is clear that to justify reversal the remarks must be plainly improper and of a material character. *Cross* v. *State*, 68 Alabama, 476; *Pierson* v. *State*, 18 Tex. App. 524; *House* v. *State*, 19 Tex. App. 227; *Shuler* v. *State*, 105 Indiana, 289; *State* v. *Griffin*, 87 Missouri, 608; *Polin* v. *State*, 14 Nebraska, 540; *Combs* v. *State*, 75 Indiana, 215; *State* v. *Stark*, 72 Missouri, 37. See also *State* v. *Horner*, 139 N. Car. 606.

The cross-examination of defendant Adams was proper on either of these grounds: it was clearly within the scope of the direct examination; it tended to impeach his veracity, and to show general bad character. A defendant in his witness character is on the same footing as any other witness. While in general the cross-examination of a defendant witness in a criminal case is restricted to the matter of the examination-in-chief and to matter affecting his credibility, there are authorities to the effect that a witness who is a party subjects himself to especial latitude in cross-examination, the course and extent of such cross-examination being committed to the control of the court in the exercise of a sound discretion, which is not reviewable on appeal. The rule appears to be applicable both in civil and criminal cases. *Storm* v. *United States*, 94 U. S. 76; *Rea* v. *Missouri*, 17 Wall. 532; *Davis* v. *Coblens*, 174 U. S. 719; *Blitz* v. *United States*, 153 U. S. 308; *Allen* v. *United States*, 115 Fed. Rep. 3, 11. The decisions are conflicting throughout the many jurisdictions in the United States, but the weight of authority commits the control and scope of cross-examination to the discretion of the court, and permits a witness to be impeached on cross-examination, always by questions going to his veracity, generally by questions directed at his reputation in allied respects, often by general character, and sometimes by specific instances of

misconduct. 2 Wigmore on Evidence, §§ 889–891, 922–924; see also §§ 983, 987; vol. 3, § 2277; *State* v. *Pancoast,* 35 L. R. A. 518, 527, 533. The law of North Carolina admits great latitude on cross-examination; bad character may be shown, and specific instances of misconduct. *State* v. *Efler,* 85 N. Car. 585, citing *State* v. *Boswell,* 2 Dev. 209; *State* v. *O'Neale,* 4 Ired. 88; *State* v. *Dove,* 10 Ired. 469; *State* v. *Parks,* 3 Ired. 296; *State* v. *Thomas,* 98 *N. Car.* 599; see also *State* v. *Stallings,* 2 Hayw. 300; and the law in that State is important and persuasive, if not controlling. *Fitzpatrick* v. *United States,* 178 U. S. 304.

But there are two reasons why the cross-examination here does not constitute reversible error: the answers to the particular questions were all in the negative, and were conclusive on the prosecution. *State* v. *Pancoast,* 35 L. R. A. 533, citing Rice on Ev. § 222. See also *People* v. *Jackson,* 3 Park. Cr. 391; *Oxier* v. *United States,* 38 S. W. Rep. 331; *Newcomb* v. *Griswold,* 24 N. Y. 298; 1 Starkie on Ev. 190. Counsel did not follow their objection to the questions by requesting the court to charge the jury, if the testimony were admitted, that it could only be considered by them on the question of veracity; defendants must be held to have waived further objection by not taking this course, and the court was not bound to give instructions upon that particular question since they were not requested. *Commonwealth* v. *Kneeland,* 20 Pick. 206, 222; *Hodge* v. *State,* 85 Indiana, 561; *Powers* v. *State,* 87 Indiana, 144, 153; *Edwards* v. *State,* 47 Mississippi, 581, 589; 2 Thompson on Trials, §§ 2339, 2341, 2343.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The first question to be noticed in this case arises by reason of these facts: When the case was called for trial the clerk proceeded to call the names of the jurors, and the record shows that:

"While the jury was being impaneled several jurors were called, and as each juror appeared he was told by the district attorney to stand at the foot of the panel, without any challenge on the part of the Government and without an opportunity given to defendants to accept, challenge for favor or cause, or to peremptorily challenge any and all of said jurors so stood aside.

"To each and to every action in this respect on the part of the Government the defendants promptly and in due time objected, but the court overruled the objections, saying the state practice would be followed, and there was no United States statute on the subject; to which ruling of the court the defendants, by their counsel, then and there duly excepted, and the exceptions were allowed. It appeared that neither the Government nor the defense had exhausted all their peremptory challenges when the jury was impaneled."

The inquiry is, whether the court had the power to permit such conditional challenge by the Government?

The origin of this practice is stated by Mr. Justice Field in delivering the opinion of the court in *Hayes* v. *Missouri*, 120 U. S. 68, 71. It is there said:

"Originally, by the common law, the Crown could challenge peremptorily without limitation as to number. By act of Parliament passed in the time of Edward the First, the right to challenge was restricted to challenges for cause. But, by a rule of court, the Crown was not obliged to show cause until the whole panel was called. Those not accepted on the call were directed to stand aside. If, when the panel was gone through, a full jury was obtained, it was taken for the trial. If, however, a full jury was not obtained, the Crown was required to show cause against the jurors who had been directed to stand aside; and, if no sufficient cause was shown, the jury was completed from them."

The question here involved was not directly before the court in that case, but the accuracy of the statement is not questioned. It is not disputed that the practice has prevailed in

the State of North Carolina ever since the foundation of the
State, and it has also prevailed in South Carolina and Penn-
sylvania.

In 1790 Congress provided for granting certain peremptory
challenges to the defendant (1 Stat. 119), but no peremptory
challenge · was allowed to the Government.

While the Government was thus situated in regard to per-
emptory challenges the case of *United States* v. *Marchant,* 12
Wheat. 480, came before the court.  The question directly in-
volved was whether persons jointly charged in the same indict-
ment for a capital offense had a right by law to be tried sepa-
rately without the consent of the prosecutor, and it was held
that persons so jointly charged had not that right, but that
such separate trial was a matter to be allowed in the discretion
of the court.  In the course of the opinion, however, which
was delivered by Mr. Justice Story, it was stated as follows:

"But a still more direct conclusion against the right may
be drawn from the admitted right of the Crown to challenge
in criminal cases, and the practice under that right.  We do
not say that the same right belongs to any, of the States of the
Union; for there may be a diversity in this respect as to the
local jurisprudence or practice. , The inquiry here is, not as
to what is the state prerogative, but, simply, what is the
common law doctrine as to the point under consideration.
Until the statute of 33 Edw. I, the Crown might challenge
peremptorily any juror, without assigning any cause; but that
statute took away that right, and narrowed the challenges of
the Crown to those for cause shown.  But the practice since
this statute has uniformly been, and it is clearly settled, not to
compel the Crown to show cause at the time of objection taken,
but to put aside the juror until the whole panel is gone through.
Hawkins, on this point, says (Pl. Cr. b. 2, ch. 43, s. 2, s. 3),
'if the King challenge a juror before the panel is perused, it
is agreed that he need not show any cause of his challenge,
till the whole panel be gone through; and it appears that there
will not be a full jury without the person so challenged.  And

if the defendant, in order to oblige the King to show cause, presently challenge, *touts paravaile;* yet it hath been adjudged, that the defendant shall be first put to show all his causes of challenge before the King need to show any.' And the learned author is fully borne out by the authorities which he cites, and the same rule has been recognized down to the present times.

"This acknowledged right of peremptory challenge existing in the Crown before the statute of 33 Edw. I, and the uniform practice which has prevailed since that statute, to allow a qualified and conditional exercise of the same right, if other sufficient jurors remained for the trial, demonstrate, as we think, that no such power of selecting his jury belongs, or was ever supposed to belong, by the common law, to the prisoner; and that, therefore, he could not demand, as matter of right, a separate trial to enable him to exercise it. In a separate or joint trial he could at any time be defeated by the Crown of such choice, by its own admitted prerogative."

It is true that the matter involved in the *Marchant* case did not call for this statement, as the direct question was not in issue. It was made argumentatively, as one reason for denying the right claimed by defendant in that case. Subsequently the Circuit Court of the United States in Pennsylvania, in 1830, followed the views expressed in the *Marchant* case. *United States* v. *Wilson and Porter*, 1 Bald. 78. In that case the right was claimed by the district attorney and denied by counsel for defendant, but was allowed by the court upon the ground that it considered the opinion of the Supreme Court as a recognition of the qualified right of the United States to challenge, and directed the juror to be put aside until the panel was exhausted, declaring that if that should happen and the juror be again called the United States could not then challenge him without showing cause.

Again, in the case of *United States* v. *Douglass*, 2 Blatch. 207, which was decided in 1851, this qualified right of challenge was conceded to exist by Mr. Justice Nelson, who presided on

the trial in that case, but was denied by District Judge Betts, who sat with him. The case was tried in the Southern District of New York, in which State no such right of conditional challenge existed. A motion for a new trial was made before the same court, and Judge Nelson said in his opinion, in denying the motion, that "this qualified right of challenge without cause is the settled doctrine of the common law, and has been recognized by the Supreme Court of the United States in the case of *United States* v. *Marchant,* 12 Wheat. 480, and has been practiced upon in some of the circuits." The judge then said that the doubt as to the right of the Government arose by reason of the passage of the act of July 20, 1840, 5 Stat. 394, providing for the designation of jurors to serve in the Federal courts, and empowering those courts to make rules and regulations for conforming the designation and impaneling of jurors to the laws and usages of the States as they may exist at the time. A rule to that effect had been adopted in the Southern District of New York. The justice further stated in his opinion that the act of 1840 applied only to the mode and manner of drawing or selecting the jury—that is, by ballot, lot or otherwise—as prescribed by the state laws, and that it did not affect the questions involved in the right of challenging the jurors called, whether peremptorily or for cause; and that those questions stand upon the common law, except where regulated by the act of Congress. Judge Betts, in his opinion, which is set forth in the report, held that no such right existed, certainly not in the States where such practice was not recognized.

In 1855 the case of *United States* v. *Shackelford,* 18 How. 588, came before the court. It arose on a certificate of difference of opinion between the judges holding the Circuit Court of the United States for the District of Kentucky. The question was whether the defendant, who was indicted for a misdemeanor, was entitled to any peremptory challenges, and, as the judges were divided in opinion, they certified the question of difference to this court. Mr. Justice Nelson, in delivering the opinion of the court, stated that the power conferred upon

the Federal courts under the act of 1840, *supra*, enabled those
courts to adopt rules and regulations for conforming the des-
ignation and impaneling of jurors to the laws and usages in
force at the time in that State, and that by virtue of that act
the courts were enabled to adopt those laws and usages in
respect to challenges of jurors, whether peremptorily or for
cause, and in cases both civil and criminal, with the exception
therein stated. It was further held that, as the act of 1790,
1 Stat. 112, 119, gave persons indicted for treason a certain
number of peremptory challenges, etc., that act expressly
recognized the right of peremptory challenge, and the right
should be regarded as excepted out of the power of the courts
to regulate the subject by rule or order under the aforesaid act
of 1840. Mr. Justice Nelson further observed as to the common
law that it "gave to the King a qualified right of challenge in
these cases, which had the effect to set aside the juror till the
panel was gone through with, without assigning cause, and if
there was not a full jury without the person so challenged, then
the cause must be assigned or the juror would be sworn."
Continuing, he said:

"The court is of opinion that the right of challenge by the
prisoner recognized by the act of 1790 does not necessarily
draw along with it this qualified right, existing at common law,
by the Government; and that, unless the laws or usages of
the State, adopted by rule under the act of 1840, allow it on
behalf of the prosecution, it should be rejected, conforming in
this respect the practice to the state law."

In the case before us the laws or usages of the State per-
mitted this qualified right of challenge by the Government.
No case in this court has been cited, nor have we found one,
that decides the question now before us. Those which we have
referred to, whether of this court or the Circuit Courts of the
United States, were at any rate decided before the passage of
the act of Congress of 1865, 13 Stat. 500, amended in some
particulars by the act of 1872, 17 Stat. 282. These statutes
gave peremptory challenges to the Government, and the ques-

tion now presented is whether after Congress has dealt with the subject of such challenges the former qualified right of challenge on the part of the Government still exists in those States where such practice obtains, and the practice has been adopted by a rule of court in the courts of the United States. Section 800 of the Revised Statutes of the United States in substance reproduces the act of 1840, above referred to, so that the subject must be considered with reference to that section as well as the statute which gives challenges to the Government.

The question arose in *United States* v. *Butler,* 1 Hughes, 457, 467. The trial was held before Chief Justice Waite and Judge Bond in the United States Circuit Court for the District of South Carolina in April, 1877. Upon the impaneling of the jury a juror was called and was examined on his *voir dire,* and was then told by the counsel for the Government to stand aside. The defense objected, and insisted that the prosecution must either exercise the right of challenge or waive it entirely and at once. The court held that this rule was in force when the Government had no right of peremptory challenge, but as the right of peremptory challenge had been given to the prosecution it should be given the same right with the defense and should exercise the right at once or not at all.

This decision of the Federal Circuit Court is the only one brought to our attention that has been decided since the passage of the acts of Congress, giving the right of peremptory challenge to the Government. It was by virtue of the act of 1840, already mentioned (Rev. Stat. § 800), that the Federal courts have been enabled to adopt the laws and usages of the State in respect to the challenging of jurors, whether peremptorily or for cause. *United States* v. *Shackelford,* 18 How. *supra.*

When the Federal statute granted the right to a certain number of peremptory challenges to the defendant in criminal cases, it was said that such right must be regarded as excepted out of the power of the court to regulate the same by rule or

order under the act of 1840. As the statute prescribed the number of challenges to the defendant, the court could not, therefore, proceed under the act of 1840, and by rule or order prescribe any other number, or none at all, in accordance with the practice of the state courts in that respect. The Federal statute was held to be exclusive of any other regulation on the subject, because to give any other number of challenges to the defendant would be inconsistent with the provisions of the Federal statute, even though the matter of peremptory challenge was provided for by the state practice. In such a case the power to provide by rule of court was to be regarded as excepted from the provisions of the act of 1840.

But, in giving by statute the right of peremptory challenge to the Government in certain cases, it does not necessarily affect the exercise of the power of the Government to challenge in this qualified manner. A conditional or qualified right of challenge is not inconsistent with the existence of the right of peremptory challenge given by statute. The two may co-exist, and the Government may exercise the right of peremptory challenge given by statute and in the same case exercise the qualified or conditional challenge, as in the case at bar.

It was stated in the opinion in the *Shackleford* case that unless the laws or usages of the State (adopted by rule by the Federal courts under the act of 1840) allowed it, the right should be rejected, and the practice conformed in that respect to the state law. But in North Carolina the state law permits such qualified right of challenge, and the court in this case made the order to follow the state practice, there being no United States statute on the subject.

In Pennsylvania, which is one of the States where the practice has always obtained, the Supreme Court held that a statute, giving peremptory challenges, does not take away this right of the Government. *Haines* v. *Commonwealth*, 100 Pa. St. 317, 322; *Commonwealth* v. *O'Brien*, 140 Pa. St. 555, 560.

To the same effect are the decisions in North Carolina. The

right remains notwithstanding the enactment of a law giving peremptory challenges to the State. *State* v. *Benton,* 19 N. Car. 196, 203; *State* v. *Hensley,* 94 N. Car. 1021, A. D. 1886.

The courts of Georgia and Florida are of a different opinion. *Sealy* v. *State,* 1 Georgia, 213; *Mathis* v. *State,* 31 Florida, 291, 315.

We are of opinion that the passage of the acts of Congress, granting peremptory challenges to the Government, has not taken away the qualified right of challenge under discussion in this case. As we have said, there is certainly nothing in the statute granting peremptory challenges to the Government to prevent its exercise of the other kind of challenge when permitted in the State, and where it has been adopted by the Federal court as a rule, or by special order as in this case. The exercise of this right is under the supervision of the court, and it ought not to be permitted to be exercised unreasonably, or so that the interests of the defendant might be unduly prejudiced. The court should take special care to that end.

In this case it appears that neither the Government nor the defendants had exhausted all their peremptory challenges when the jury was obtained. We think it plain that the Government's right of qualified challenge was not unreasonably exercised, and the rights of the plaintiffs in error suffered no injury by the course permitted by the court.

Another question argued arises upon the cross-examination by the district attorney, of the plaintiff in error Adams, who voluntarily became a witness on the trial on his own behalf and in behalf of his fellow-plaintiff in error. The cross-examination referred to the conduct of the witness on a previous voyage and on a different vessel, in regard to which nothing had been said on the examination of the witness in chief.

It has been held in this court that a prisoner who takes the stand in his own behalf waives his constitutional privilege of silence, and that the prosecution has the right to cross-examine him upon his evidence in chief with the same latitude as would

be exercised in the case of an ordinary witness, as to the circumstances connecting him with the crime. *Fitzpatrick* v. *United States*, 178 U. S. 304.

It is contended on the part of the plaintiffs in error that within this rule the cross-examination was improper, as the subject matter of the cross-examination had no tendency to connect the prisoner with the alleged crime for which he was on trial.

The district attorney on his cross-examination began with questions relating to the experience which the witness had had as a seaman, and, asked him in regard to the vessels that he had sailed on. It appeared that he had been one of the crew, among others, of the schooner Benefit, for some fifteen months, whose captain was a man named Falkner. He was then asked if during the latter part of the fifteen months he was on the schooner he did not have trouble and try to create insubordination on board that vessel. This question was duly objected to by counsel for defendants, and the objection overruled by the court and an exception allowed. He answered that he was not logged, and then stated that the trouble arose from the cook giving them molasses to make tea, which he said was not right, and he and three other men went to the captain and asked him if he thought it was right, and the captain said they did not have sugar and would have to use molasses. The witness took the tea and threw it overboard; that he never went among the men and tried to create dissatisfaction among them; that the captain never threatened to put him in irons, and when he left the Benefit he shipped on another vessel named the Benj. Russell, where he stayed for over three months.

It is unnecessary in this case to inquire whether the cross-examination was within the prescribed limits, because the witness denied that he had had any trouble, or that he had ever tried to create any trouble, or that there was any insubordination on his part on board the vessel named. What he said in regard to the facts showed that there was neither trouble nor

insubordination. The Government made no attempt to contradict the evidence of the witness on this subject, and hence there could have been no harm arising from the cross-examination. There are some state authorities which hold that the error, if any, is not cured by answer of the witness denying the charge. But we think the better rule is where, as in this case, it is plain that there is no injury, the exception is not available.

The plaintiffs in error also ask for a new trial because of the remarks made by the district attorney in summing up to the jury, and the action of the court thereon.

In the course of his remarks, and in speaking of the fact that during the time these murders were being perpetrated, one of the plaintiffs in error had testified that he drank some coffee, the district attorney said, "A man under such circumstances who would drink coffee ought to be hung on general principles." This remark the counsel for the plaintiffs in error objected to, and, after hearing counsel on the objection, the court directed the district attorney to confine himself to a proper argument, and thereupon the district attorney expressed his regret if he had made an improper argument, and withdrew the remark.

When the objection was first made by counsel for the plaintiffs in error the court asked if he wanted to cut the district attorney off from making any argument, but thereupon the court immediately directed the district attorney to confine himself to a proper argument, as above stated.

Counsel for the plaintiffs in error objected to both the remarks of the district attorney and the comments of the court as made, and counsel asked to be allowed to file an exception. Upon this request the court replied, "I will give counsel the benefit of his statement that he has made an exception which the court considers frivolous."

The remark of the district attorney was not appropriate argument and should not have been made, but we see nothing more that could have been done than was done by the court as soon as the objection was made by the counsel for the plain-

tiffs in error. Counsel in summing up to a jury are under some excitement, and may naturally make a remark or statement which is improper. But there is not on that account any ground laid for setting aside a verdict where, as in this case, the court held it was improper, and the counsel withdrew and apologized for it. *Dunlop* v. *United States*, 165 U. S. 486, 498. Under such circumstances it does seem as if the exception were frivolous, and the court in stating its opinion to that effect is not open to censure.

The error assigned that the court said the plaintiffs in error were not charged with the murder of Coakley, when in fact the bill contained his name, has not been pressed, and we think there is no merit in it. The court said that if charged in the bill there was no evidence to support such charge. Certainly no harm was thereby done the plaintiffs in error.

Upon full consideration of all the objections urged by counsel for the plaintiffs in error, we think no ground appears for granting a new trial. The judgment is

*Affirmed.*

Mr. Justice White dissented.