### TIERNEY v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. March 2, 1922.)

No. 1917.

1. Jury ⊜125—Common-law practice of calling jurors.

At common law the usual practice was to call each juror separately, ascertain his qualifications, and present him for challenge.

2. Jury ⊜125—Common-law method of examination not essential.

Observance of the common-law practice of calling each juror separately, ascertaining his qualifications, and presenting him for challenge is not essential.

3. Courts ⊜352—Federal court not bound to follow state statute in examining jurors.

A federal court is not bound to follow the state statute respecting the practice of calling jurors for examination, or the usual practice of the state court.

4. Courts ⊜352—Federal District Court can examine jurors in any manner not impairing exercise of challenge.

A federal District Court is free to order any method in presenting qualified jurors which does not impair the free exercise of the right of challenge.

5. Jury ⊜125—Method of presenting jurors held proper; "right of challenge."

Complaint cannot be made of the fact that the presiding judge ordered jurors divided into three panels of 12 each, and when case was tried one panel was called into the box, and the 12 examined on their oaths as to their qualifications, and if any were disqualified their places were filled

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

from the other panels, until 12 apparently qualified were obtained, and these 12 were presented to the accused and the government for the exercise of the right of challenge for cause, and, as a juror challenged retired, another was called to his place and examined, and this method proceeded until further challenge was waived or the right exhausted; the right of challenge being a right of rejection, not of choice.

6. Criminal law ⊜⇒1166½ (6)—No complaint of method of presentation of jurors, where peremptory challenge is not exhausted.

An accused, who did not exhaust his peremptory challenges, could not complain that jurors had been improperly presented.

7. Witnesses ⊜⇒337(5)—Accused may be asked on cross-examination whether he has been guilty of other like offenses.

A defendant, indicted for carrying on the business of retail liquor without paying a special tax, could be asked on cross-examination if he had not been guilty of other like offenses, on the issue of his credibility.

Waddill, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Edwin Y. Webb, Judge.

Tom Tierney was convicted of carrying on the business of a retail liquor dealer without paying tax, and brings error. Affirmed.

Certiorari denied 257 U. S. —, 42 Sup. Ct. 590, 66 L. Ed. —.

B. J. Pettigrew, of Charleston, W. Va. (Barnhart, Horan & Pettigrew, of Charleston, W. Va., on the brief), for plaintiff in error.

J. N. Kenna, Asst. U. S. Atty., of Charlestown, W. Va. (L. H. Kelly, U. S. Atty., of Charleston, W. Va., on the brief), for the United States.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WOODS, Circuit Judge. The defendant, Tom Tierney, was convicted of carrying on the business of a retail liquor dealer without paying the special tax in November, 1918. At the term when he was tried the presiding judge, to facilitate business in the trial of accused persons, ordered the jurors divided into three panels of 12 each, numbered 1, 2, and 3. When a case was to be tried, one of these panels was called in the box. The clerk then examined the 12 on their oaths as to their qualifications. If any were disqualified, their places were filled from the other panels until 12 apparently qualified were obtained. These 12 were then presented to the defendant on trial and the government for the exercise of the right of challenge for cause or peremptory challenge without cause. As the juror challenged retired, another was called to his place and examined as to his qualification. This method proceeded until further challenge was waived or the right exhausted. The 12 jurors remaining in the box were then sworn to try the cause.

When the defendant was called on to exercise his right of challenge in this manner, his counsel, claiming the right to have presented at once 28 qualified jurors, challenged the entire panel of 12 as illegal. This claim and challenge was denied. The impaneling of the jury then proceeded in the method indicated, the defendant each time when called on to exercise his right of individual challenge refusing to do so and repeating the challenge to the whole panel.

The state statute allows in felony cases to the defendant 6 peremp-

tory challenges and to the state 2. The federal statute allows 10 and 6. Section 5579 (chapter 159, § 3) of the West Virginia Code requires a panel of 20 jurors to be qualified and presented for challenge. But there is no state or federal statute or rule of the District Court requiring 28; nor was there any federal statute or formal rule of the federal court on the subject.

The essentials to the free exercise of the right of challenge are: First, that the defendant shall have access to the list of jurors; and, second, that he shall have presented to him face to face for challenge jurors ascertained to be legally qualified. There is no complaint that the defendant did not have a list of all the jurors, but the contention is that 28 qualified jurors should have been presented together for challenge instead of 12.

[1-4] At common law the usual practice was to call each juror separately, ascertain his qualifications and present him for challenge. Layers' Case, 16 How. St. Trials, 135 (1722); Brandreth's Case, 32 How. St. Trials, 755 (1817); Regina v. Frost, 9 Car. & P. 129–137; United States v. Aaron Burr, 25 Fed. Cas. 55–83, No. 14,693; 1 Thompson on Trials, 107. But the observance of that method is not essential. Nor is the federal court bound to follow the state statute or the usual practice of the state court. The District Court was therefore free to order any method in presenting qualified jurors which did not impair the free exercise of the right of challenge. Pointer v. United States, 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208; Lewis v. United States, 146 U. S. 378, 13 Sup. Ct. 136, 36 L. Ed. 1011; St. Clair v. United States, 154 U. S. 134, 147, 148, 14 Sup. Ct. 1002, 38 L. Ed. 936; Hendrikson v. United States, 249 Fed. 34, 161 C. C. A. 94.

[5] The opportunity for comparison of jurors is greater when 12 are presented at once than under the common-law method of presenting each juror separately. The complaint against either method is met by the principle, so often repeated, that the right of challenge is a right of rejection, not of choice. The whole matter is so fully and clearly decided against the contention of the defendant in the opinion of the court in St. Clair v. United States, 154 U. S. 134, 147, 148, 14 Sup. Ct. 1002, 38 L. Ed. 936, that further discussion or citation seems unnecessary.

[6] Even if the jurors had been improperly presented, the defendant, not having exhausted his peremptory challenges could not complain of the error. Sawyer v. United States, 202 U. S. 150–165, 26 Sup. Ct. 575, 50 L. Ed. 972, 6 Ann. Cas. 269; Conn. Mutual Life Ins. Co. v. Hillmon, 188 U. S. 208, 121, 23 Sup. Ct. 294, 47 L. Ed. 446.

[7] We have recently held that a defendant, indicted for violation of the liquor laws of the United States, may be asked on cross-examination if he has not been guilty of other like offenses, on the issue of the credibility of the witness. Fields v. United States, 221 Fed. 242, 245, 137 C. C. A. 98; Christopoulo v. United States, 230 Fed. 788, 791, 145 C. C. A. 98; Wharton's Crim. Ev. p. 1666; 1 Wigmore, p. 444.

Affirmed.

WADDILL, Circuit Judge (dissenting). The accused was indicted, tried, and convicted for a felony, and sentenced to the penitentiary for the period of one year and a day, and fined $1.000.

Section 287 of the Judicial Code (Comp. St. § 1264) provides that upon the trial of a criminal offense, in cases of treason or capital offense, the defendant shall be entitled to 20 and the United States to 6 peremptory challenges. On the trial of any other felony, the defendant is entitled to 10 and the United States to 6 peremptory challenges; and in all other civil and criminal cases, each party shall be entitled to 3 peremptory challenges.

The crucial question involved is whether the defendant in this case was accorded his right of peremptory challenge contemplated by this statute. As shown by the majority opinion, 36 jurors were drawn for the term, divided into three panels, Nos. 1, 2, and 3, respectively. Upon calling the case, jury No. 1, consisting of 12 men, was placed in the box, and examined as to their qualifications to serve, and upon objection by the government 3 of the jurors were excused, and 3 others chosen in their place, and, no challenge for cause being presented, the defendant was called upon to exercise his right of peremptory challenge to the 12 jurors thus selected. He thereupon, as he had done as soon as jury No. 1 was called, asked and insisted upon being furnished with a list of 28 jurors, from which the jury should be selected, and insisted that this right should be accorded him before being required to exercise his right of peremptory challenge, in order to intelligently make the same. This the court refused, and the 12 jurors then in the box were sworn to try the case, to all of which defendant duly excepted.

Was the defendant denied any right to which he was entitled by this method of selecting the jury? The impaneling of the jury, and the manner and method of exercising the right of challenge on the part of the accused, in the courts of the United States, is what is involved here. How this should be done seems to be fairly settled by decisions of the federal courts of last resort, as shown by three comparatively recent cases treating particularly with the subject, viz.: Lewis v. United States, 146 U. S. 370, 13 Sup. Ct. 136, 36 L. Ed. 1011; Pointer v. United States, 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208; St. Clair v. United States, 154 U. S. 134, 14 Sup. Ct. 1002, 38 L. Ed. 936— to which reference will be especially made. Three questions are definitely settled by these decisions, which may be briefly stated as follows:

(A) That while the qualifications and exemptions of jurors to serve in the courts of the United States are controlled by the laws of the state in which such courts are held, the laws and usages of the state relating to designating and impaneling jurors are not controlling in the courts of the United States, save as the same may be adopted in said courts by standing rule, or by special order in a particular case. United States v. Shackelford, 18 How. 588, 15 L. Ed. 495; Pointer v. United States, 151 U. S. 407, 14 Sup. Ct. 410, 38 L. Ed. 208, supra; United States v. Richardson (C. C.) 28 Fed. 61, 69.

(B) That the United States District Courts may by standing rule, or

special order in a particular case, designate and prescribe the method of impaneling juries for the trial of criminal cases in such courts.

(C) Where the District Courts have neither by standing rule, adopted the state practice regarding the impaneling of jurors, or prescribed a method of their own, or made a special order in a particular case, the manner and method of impaneling a jury is within the discretion of such courts. But this authority must be exercised subject to the restrictions of Congress as prescribed, and also to such limitations as are recognized by the settled principles of criminal law, to be essential in securing impartial juries for the trial of offenses, and, as differently stated in Lewis v. United States, 146 U. S. 379, 13 Sup. Ct. 139, 36 L. Ed. 1011, supra, subject to the condition "that such rules should be adapted to secure all the rights of the accused."

In this case there was no standing rule adopting the state practice as to impaneling juries. There was no standing rule prescribing the practice in the federal court, nor was there any special order entered prescribing what such practice in this instance should be. The court at the trial proceeded in the absence of such rules and regulations to impanel the jury. This case turns upon whether or not, in the exercise of its discretion under such circumstances, error was committed prejudicial to the accused, or which hindered or embarrassed him in the exercise of his constitutional and statutory rights respecting the jury.

A careful consideration of the above-named cases in the Supreme Court will greatly clarify this subject, and they will be referred to in their proper order. In Lewis v. United States, supra, 146 U. S. 370, 375, 13 Sup. Ct. 136, 36 L. Ed. 1011, the court, at the trial, directed two copies of the list of 37 qualified jurors to be made out by the clerk, one to be given to the district attorney, and the other to the defendant, with the direction that either side proceed to make their challenges, without knowledge on the part of the other as to what challenges were made by each. The record failed to show that, at the time the challenges were made, the jury had been called to the box, or that the prisoner was present; nor did it appear that the clerk called the entire panel of the petit jury, or that they answered to their names, so that they could be inspected by the prisoner. The court set aside the verdict after conviction, and awarded a new trial, because the record did not sufficiently show that what occurred was in the presence of the accused.

In Pointer v. United States, supra, 151 U. S. 396, 408, 409, 411, 14 Sup. Ct. 410, 38 L. Ed. 208, a capital case, a panel of 37 jurors was furnished the prisoner; the said jurors having, in open court, in his presence been found to be qualified to serve, and from this number the government and the defendant respectively were allowed to make their peremptory challenges. The defendant objected to this method, and insisted that he had the right, under the law of Arkansas, to have the government first make its peremptory challenge, before the defense was required to make any. This right was denied; the court holding that the jury was legally and properly selected. In this case, as in the Lewis Case, there was no standing rule or order of court prescribing the manner in which the impaneling of juries should be made.

The third case, St. Clair v. United States, supra, 154 U. S. 146, 147,

148, 14 Sup. Ct. 1002, 38 L. Ed. 936, also a capital case was one where the method pursued of selecting a jury was more in accord with that pursued in the present case in this: That the right of peremptory challenge was made pending the selection of the jurors on voir dire, instead of after the whole panel was completed; but the circumstances of that case are wholly unlike the one here, and while, in a way, it gives color to it, it does not sustain the action of the trial court in this case. There, the Circuit Court of the United States for the Northern District of California, had a standing rule of court on the subject, which in terms required that jurors should be sworn as soon as the examination was completed, and before the examination of another juror. It is as follows:

"In all criminal trials the designation, impaneling, and challenging of jurors shall conform to the laws of this state existing at the time, except as otherwise provided by acts of Congress or the rules of this court; but a juror shall be challenged, or accepted and sworn, in the case as soon as his examination is completed, and before the examination of another juror."

This rule was, in effect, in accordance with the statute of California on the subject. Deering's Penal Code Cal. 1915, §§ 1055, 1057, 1066, 1067, 1068, 1069, 1088. Not only was the method pursued in that case in harmony with the state law, and with the stated rule of court, but the jury was not selected until the first panel of 50 jurors had been examined in the presence of the accused, in open court, and from which number only 8 had been accepted. Whereupon the court ordered 25 additional talesmen to be summoned, returnable to a later day, and from that number likewise in the presence of the accused, in open court, 4 additional jurors were secured. In other words, out of 75 jurors, in pursuance of the fixed rule of court, with full opportunity for the defendant to examine and test their qualifications, these 12 were selected for his trial, with all of whom he was brought face to face in open court.

The first-named cases of Lewis v. United States and Pointer v. United States are more in accord with the general practice, where there is no state authority in vogue, and no rule of court on the subject. They make it quite clear that, before an accused is required to exercise his right of peremptory challenge, he is furnished with the names of the jurors found qualified to try him, from which he may do so, and, it should be said in passing, that the statute of West Virginia expressly provides for the peremptory challenge after the full panel has qualified to serve as jurors.

The real test in whatever method there may be of exercising the peremptory challenge is whether the defendant, when he was required to make the same, was brought face to face with the persons whom he desired to challenge, knew who they were, and how he could intelligently exercise his right of challenge, and at the same time know by whom he was to be tried. This would seem to be clear from the general discussion of the subject in the Pointer Case last cited. The court, at page 408 of 151 U. S., at page 414 of 14 Sup. Ct. (38 L. Ed. 208), says:

"Nor is it contended that the jurors who were examined as to their qualifications before the list of 37 qualified jurors was furnished were not properly selected for general service during the term."

In further reference to the selection of the jury, the court said at page 409 of 151 U. S., at page 415 of 14 Sup. Ct. (38 L. Ed. 208):

"Were his rights in these respects impaired or their exercise embarrassed by what took place at the trial? We think not. The jurors legally summoned for service on the petit jury were, as we have seen, examined in his presence as to their qualifications, and 37 were ascertained, upon such examination, to be qualified to sit in the case. Both the accused and the government had ample opportunity, as this examination progressed, to have any juror who was disqualified rejected altogether for cause. A list of all those found to be qualified under the law, and not subject to challenge for cause, was furnished to the accused and to the government, each side being required to make their challenges at the same time, and having notice from the court that the first 12 unchallenged would constitute the jury for the trial of the case. It is apparent, from the record, that the persons named in the list so furnished were all brought face to face with the prisoner before he was directed to make, and while he was making, his peremptory challenges."

In a further discussion, at page 411 of 151 U. S., at page 416 of 14 Sup. Ct. (38 L. Ed. 208), the court said:

"We cannot say that the mode pursued in the court below, although different from that prescribed by the laws of Arkansas, was in derogation of the right of peremptory challenge belonging to the accused. He was given, by the statute, the right of peremptorily challenging 20 jurors. That right was accorded to him. Being required to make all of his peremptory challenges at one time, he was entitled to have a full list of jurors upon which appeared the names of such as had been examined under the direction of the court and in his presence, and found to be qualified to sit on the case. Such a list was furnished to him, and he was at liberty to strike from it the whole number allowed by the statute, with knowledge that the first 12 on the list, not challenged by either side, would constitute the jury."

At page 408 of 151 U. S., at page 414 of 14 Sup. Ct. (38 L. Ed. 208), the court said that—

"Any system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned. And, therefore, he cannot be compelled to make a peremptory challenge until he has been brought face to face, in the presence of the court, with each proposed juror, and an opportunity given for such inspection and examination of him as is required for the due administration of justice."

Can it be seriously claimed that what was done in the present case was in accord with the simple and manifest common-sense requirements set forth in the Pointer Case? To ask this question is to answer it in the negative. Does not that case clearly show, as does the Lewis Case, supra, 146 U. S. 370, 13 Sup. Ct. 136, 36 L. Ed. 1011, that before the accused can properly be called upon to exercise his right of peremptory challenge, the names of 28 persons who have been examined in his presence, in open court, had been found qualified to serve as jurors in his case? The necessity for this previous examination is manifest in several parts of the opinion, and the Lewis Case was reversed because the previous examination was apparently made out of the presence of the accused. The denial of the right of peremptory challenge in impaneling the jury is a matter of the greatest moment, and of vital importance to the accused. Mr. Justice Harlan, in the Pointer Case, su-

pra, refers to it as one of the most important of the rights secured to an accused. Coke says the end of challenge is—

"to have an indifferent trial, and which is required by law; and to bar a party indicted of his lawful challenge is to bar him of the principal matter concerning his trial." 3 Inst. 27, c. 2.

It cannot be claimed that the accused was not seriously embarrassed in the exercise of his right of peremptory challenge, by the course pursued in this case. He had, it is true, the names of 12 persons before him for challenge, and he was required to object to them if he intended to or so desired. Had he challenged peremptorily 10 out of the 12 jurors, the government having stricken the names of 3 from the 15 called, only 2 jurors would have been secured, and in the selection of the other 10, he would have been forced to rely only upon the challenge for cause, wholly within the discretion of the court, and by the mere challenging for cause, he might and most probably would have offended some of the persons chosen to try him, with the result that he would thereby have lost the real benefit of his right of peremptory challenge, and been deprived of securing a fair and impartial jury to try him. The course pursued here not only largely impaired the right of peremptory challenge, but it deprived the accused of a comparison and choice between jurors, with little or no opportunity for observation of each juror, essential to the intelligent exercise of the right of challenge. Lamb v. State, 36 Wis. 424.

If the requirement to exercise the right of peremptory challenge, in advance of the choice of the duly qualified panel from which to strike, is ever to be made, it will be seen that there is a great difference in cases where a large number of jurors are called and examined, as in the St. Clair Case, supra, 154 U. S. 134, 14 Sup. Ct. 1002, 38 L. Ed. 936, or where, as in the Burr Case, referred to in the majority opinion, 96 persons were called and examined and a case like this, where only 15 were called and sworn. It would seem that the exercise of a wise discretion would, in this case, have forbidden the enforcement of the peremptory challenge, in advance of the accused knowing who the triers were to be, especially over his objection. To have granted his request would have been only to apply the axiomatic doctrine in a criminal case of giving the accused the benefit of the doubt.