**PHILBROOK et al. v. UNITED STATES.**

No. 11744.

Circuit Court of Appeals, Eighth Circuit.

Feb. 14, 1941.

Rehearing Denied March 11, 1941.

William N. Jamieson, of Omaha, Neb., for appellants.

Joseph T. Votava, U. S. Atty., of Omaha, Neb. (Ambrose C. Epperson, of Omaha, Neb., Fred G. Hawxby, of Lincoln, Neb., and Emmet L. Murphy, of Omaha, Neb., Asst. U. S. Attys., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The appellants were tried and convicted under an indictment in thirty-one counts, thirty of which charged them and some fifty other persons with violations of 18 U.S.C.A. § 338 (the Mail Fraud Statute). In the thirty-first count of the indictment they were charged with a conspiracy to violate § 338 (18 U.S.C.A. § 88).

The appellants challenge the procedure followed by the court below in impaneling[1] the jury to try the case.

The appellant Philbrook, who was convicted on only the thirty-first count of the indictment, in addition contends that the verdict against him is invalid because his conviction on the thirty-first count of the indictment is inconsistent with his acquittal upon the other counts.

---

[1] The word "impaneling" is used as meaning selecting the twelve trial jurors from the jury panel.

The appellants were tried before the Honorable Robert C. Bell, United States District Judge for the District of Minnesota, who had been duly assigned to the District of Nebraska. Judge Bell was not familiar with the usual practice of the United States District Court for the District of Nebraska in impaneling juries in criminal cases, but desired to conform to it. There was no standing written rule of that Court defining its practice in that regard.

The defendants were entitled to ten peremptory challenges, and the Government to six. 28 U.S.C.A. § 424. Twelve jurymen[2] were called to the jury box and examined as to their qualifications to sit as jurors in the case. Three were excused for cause. Three other jurymen were called. They were examined, and none of the twelve jurymen in the box was challenged for cause. The Court called for the exercise of peremptory challenges, and announced that the order of challenge would be 2-1, 2-1, 2-1, 2-1, 1-1, 1-1, the defendants to start the challenging. The defendants waived their first two peremptory challenges. The Government exercised its first peremptory. The juryman challenged by the Government was excused. That left eleven unchallenged jurymen in the box who were apparently acceptable to the defendants and to the Government. Counsel for the Government asked that the eleven jurymen in the box be sworn as jurors. Counsel for the defendants objected.

Judge Bell then called all counsel into his chambers for the purpose of determining the procedure to be followed. In chambers, counsel for the defendants asserted that the procedure called for by counsel for the Government was not that which was usually followed by the United States District Court for the District of Nebraska in the trial of criminal cases. Judge Bell then called in Honorable James A. Donohoe, United States District Judge for the District of Nebraska, who stated that it would be in accordance with the practice of that Court to swear in as jurors the eleven unchallenged jurymen in the jury box. After argument, it was decided to return to the courtroom and "start all over again".

Court was convened, and Judge Bell announced from the bench that the procedure for selecting the jury would be that prevailing in the State of Nebraska as he understood it, but that, to avoid any injustice to anyone, they would "start all over again". The eleven unchallenged jurymen were in the jury box. The defendants then exercised one of their peremptory challenges, and either waived or reserved one. The Government then exercised a peremptory challenge, but neither the Government nor the defendants exercised any further peremptory challenges as to the jurymen then in the jury box. Up to this point the record does not show that the defendants objected to the procedure which was followed after the discussion in chambers. The two jurymen who had been challenged were excused and stepped from the jury box, so that nine jurymen were left, none of whom had been challenged. These nine were then sworn as jurors without objection. Three additional jurymen, called to the box, were examined for qualifications, and were not challenged for cause. The parties were again called upon to exercise peremptory challenges. The defendants ("for the purpose of making a record") exercised two peremptory challenges, one against a juror who had already been sworn, and the other against one of the three jurymen who had just been called to the jury box. Counsel for the Government objected to the defendants' challenging the sworn juror. Counsel for the defendants said: "If we haven't the right to strike this Mr. Madden, then we want to challenge somebody else." The court ruled that the defendants could not challenge any of the jurors who had been sworn. The defendants then exercised the same two peremptory challenges against two of the three jurymen who had just been called to the jury box, and the Government challenged the other. The challenged jurymen were excused, and three additional jurymen were called to take their places, and this procedure continued until the defendants had exhausted their ten peremptory challenges, until the Government had used five of its peremptory challenges, and until the jury was completed. Whenever a juryman was passed for cause and no peremptory challenge was exercised as to him, he was im-

mediately sworn as a juror and took his place with those who had already been sworn. The jury list kept by the Clerk shows that thirty-four jurymen were called; that six were excused for cause; that ten were challenged peremptorily by the defendants; that five were challenged peremptorily by the Government; and that one was apparently excused by agreement, since no notation of any reason for his elimination appears on the jury list. After the jury was sworn and when the Government called its first witness, the defendants objected to the introduction of any evidence on the ground that the jury was not properly impaneled, "as the record shows that the Government exercised two challenges on the first two jurors called, wherein they were only entitled to exercise one challenge before defendants exercised their second two challenges." No other objection to the procedure followed in securing the jury was made during the trial.

The appellants contend that the procedure followed in impaneling the jury was erroneous and amounted to a denial of their constitutional right to trial by jury, (1) because the Government was allowed to exercise one peremptory challenge out of turn, and was permitted to remove an accepted juryman from the box; and (2) because the defendants should have been allowed to challenge peremptorily the sworn juror against whom they had interposed a challenge after he had been sworn, and the first nine unchallenged jurymen should not have been sworn as jurors until all peremptory challenges had been exhausted or waived. We shall consider the contentions upon their merits, although we think the defendants did not properly present them to the trial court or preserve them for review.

It is to be noted that, after the conference in his chambers, Judge Bell restored to the defendants their right to exercise their first two peremptory challenges, which the record shows they had waived. The peremptory challenge which had been exercised by the Government was not restored to it, and the juryman first challenged by it was not called back. As matters then stood, the defendants had ten peremptory challenges, and the Government had five. The defendants were at liberty to challenge peremptorily any juryman then in the box, but understood that all jurymen, of the original twelve, whom they or the Government did not challenge

would be regarded as being acceptable and would be sworn as jurors to try the case. Confronted by that situation, the defendants challenged only one of these eleven jurymen, and the Government challenged one.

A certificate of Judge Donohoe, which is a part of the record, indicates that the procedure followed by Judge Bell in impaneling the jury was substantially that which has uniformly prevailed in the United States District Court for the District of Nebraska since the year 1933. Briefly, the practice is to require the parties to exercise peremptory challenges as soon as twelve apparently qualified jurymen, unchallenged for cause, are in the jury box. Peremptory challenges are exercised in rotation. The defendant can exercise as many of his peremptory challenges against the twelve jurymen in the jury box as he sees fit, and the Government, in its turn, can exercise as many of its peremptory challenges against them as it desires to use. Of the twelve jurymen in the jury box, those who go unchallenged are immediately sworn as jurors to try the case, and thereafter are not subject to further challenge by either party.

The Sixth Amendment to the Constitution of the United States provides that in all criminal prosecutions the accused shall enjoy the right to a trial by an impartial jury. There is nothing in the Constitution which requires Congress to grant peremptory challenges to the accused, or which limits the courts to any particular method of securing to an accused the right to exercise the peremptory challenges which Congress grants him. Compare Stilson v. United States, 250 U.S. 583, 586, 40 S.Ct. 28, 63 L.Ed. 1154. The order in which peremptory challenges must be exercised is within the discretion of the trial court. Pointer v. United States, 151 U.S. 396, 410, 14 S.Ct. 410, 38 L.Ed. 208. It can require the Government to exercise its peremptory challenges first; but it is not required to do so. Pointer v. United States, supra, 151 U.S. page 410, 14 S.Ct. 410, 38 L.Ed. 208. The accused and the Government can be required to make their peremptory challenges at the time any qualified juryman is presented for challenge or acceptance. (Pointer v. United States, supra, 151 U.S. page 410, 14 S.Ct. 410, 38 L.Ed. 208); and a rule of court requiring that, if not challenged, a juryman shall be accepted and sworn, is valid. St. Clair v. United States, 154 U.S.

134, 147, 148, 14 S.Ct. 1002, 38 L.Ed. 936. The only limitations upon a court of the United States in impaneling a jury is that the system used must not be one "that prevents or embarrasses the full, unrestricted exercise by the accused of his right of peremptory challenge", and must not be inconsistent with any settled principle of criminal law, or interfere with the selection of impartial juries. St. Clair v. United States, 154 U.S. 134, 148, 14 S.Ct. 1002, 1008, 38 L.Ed. 936.

■■ The court below was free to follow any method in impaneling a jury which did not impair the free exercise by the defendants of their right of challenge. Tierney v. United States, 4 Cir., 280 F. 322, 324, certiorari denied, 259 U.S. 588, 42 S.Ct. 590, 66 L.Ed. 1077. Compare Avila v. United States, 9 Cir., 76 F.2d 39, 42, 43–49. The procedure followed by the court below, by which there were presented at one time to the defendants, for peremptory challenge, twelve qualified jurymen (eleven after the conference in chambers), was more favorable to the defendants than the permissible common-law method of presenting each juryman separately. Tierney v. United States, supra, 280 F. page 324. The statute gave to the defendants the right to challenge peremptorily ten jurymen. That right is a right of rejection, and not of selection. Tierney v. United States, supra, 280 F. page 324; Kloss v. United States, 8 Cir., 77 F.2d 462, 463; Albizu v. United States, 1 Cir., 88 F.2d 138, 141. The defendants fully exercised the right.

■ Even if the defendants' theory that the Government's first or second peremptory challenge was taken out of order be accepted, that would be of no help to them, since the order of challenging was within the discretion and control of the trial court, and there was no abuse of discretion. At the time the first nine jurymen were sworn as jurors, to try the case, the defendants had retained nine peremptory challenges. With these challenges and only three more jurors to be selected, the defendants were in a position reasonably to control the selection of three more jurors unobjectionable to them. There is no claim that the jury was in fact unfair or partial. See and compare, Sawyer v. United States, 202 U.S. 150, 165, 26 S.Ct. 575, 50 L.Ed. 972, 6 Ann.Cas. 269; . Kloss v. United States, 8 Cir., 77· F.2d 462, 463.

The procedure followed by the trial court in impaneling the jury did not impair the appellants' right to be tried by an impartial jury.

■ There is no merit in the contention of the appellant Philbrook that the verdict against him is invalid because of the inconsistency arising from his acquittal on all counts except the thirty-first. That ground for attacking a verdict has long since been destroyed by Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161, and Borum v. United States, 284 U.S. 596, 52 S.Ct. 205, 76 L.Ed. 513. See and compare, Foshay v. United States, 8 Cir., 68 F.2d 205, 217; Bedell v. United States, 8 Cir., 78 F.2d 358, 366; Morgan v. United States, 8 Cir., 98 F.2d 473, 476.

The judgments appealed from are affirmed.

Judgment entered dismissing the appeal as to Homer A. Babbitt and others for want of prosecution.