## SMITH v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   June 13, 1921.)

No. 5562.

1. **Obstructing justice ⬅⮞16—Conviction for attempting to intimidate witness sustained by evidence.**

In a prosecution under Criminal Code, § 135 (Comp. St. § 10305), for endeavoring to intimidate a witness by assaulting and beating him, where at the time of the assault the witness had once testified and was waiting recall in rebuttal, the jury *held* not precluded from finding the requisite intent from the natural effect of defendant's act, because he testified that he did not know the witness was to be recalled.

2. **Obstructing justice ⬅⮞4—Offense of intimidating witnesses not limited to witnesses under subpœna.**

It is not a defense to a charge under Criminal Code, § 135 (Comp. St. § 10305) for endeavoring to intimidate a witness by assaulting and beating him, that the person assaulted, who had testified, and who afterward testified as a witness at the time of the assault was not under subpœna.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Criminal prosecution by the United States against Roy Smith. Judgment of conviction, and defendant brings error. Affirmed.

Covington & Grant, of Ft. Smith, Ark., for plaintiff in error.

Emon O. Mahony, U. S. Atty., of El Dorado, Ark., and J. S. Holt, Asst. U. S. Atty., of Ft. Smith, Ark.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge.   The defendant below, Roy Smith, was indicted, tried, and convicted of unlawfully and willfully endeavoring, by assaulting and beating him, to influence, intimidate, and impede one Elmer Bohannon as a witness in a cause then pending in the United States District Court for the Western District of Arkansas, in which the Coronado Coal Company and others were plaintiffs and the United Mine Workers of America were defendants.   He complains concerning the trial (1) that the court refused his request to instruct the jury to return a verdict in his favor; and (2) that it declined to instruct them that if, at the time of the assault and beating, Bohannon was discharged by the court from further attendance as a witness, and a certificate for his attendance as a witness was issued to him by the clerk of the court, and he returned to his home in Johnson county, and was afterwards notified by a telegram from one of the attorneys of the Coronado Coal Company et al. to return to Ft. Smith, where the cause was on trial, he would not be a witness subject to the orders or under the protection of the court, unless he appeared in the court as a witness and submitted himself to the jurisdiction of the court, or had been served with new process, and that the court charged the jury that if, at the time of the

assault and beating, Bohannon had testified in the Coronado Coal Company case, had been discharged, and had gone to his home, and thereafter, while the case was still on trial and testimony was being taken before the jury, he had returned, upon receiving a telegram from one of the attorneys of the Coronado Coal Company, asking him to return and testify in rebuttal, then Bohannon was subject to recall before the jury.

Section 135 of the Criminal Code (U. S. Comp. Stat. § 10305) declares that—

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence intimidate, or impede any witness, in any court of the United States, * * * shall be fined not more than one thousand dollars, or imprisoned not more than one year, or both."

The first question in this case is whether or not there was any substantial evidence at the trial to sustain the verdict of the jury that the defendant below was guilty of a violation of this statute. These facts were conclusively proved: The trial of the Coronado Coal Company's case was in Ft. Smith, Ark. Bohannon lived in Hartford, Ark. He was subpœnaed by the plaintiffs' attorneys to testify in that case, and did testify on the call of the plaintiffs on November 1, 1918, and thereafter received his certificate for that day's attendance, was discharged as a witness, and went home. About the 14th day of November, 1918, he received a telegram from one of the plaintiffs' attorneys to come to Ft. Smith and testify in rebuttal. He came, afterwards proved his attendance in court on November 16 and 17, 1918, and testified in the case on November 17, 1918. About 4 o'clock in the afternoon of November 16, 1918, the day he came back to Ft. Smith from his home to testify the second time in response to the telegram, as he was walking on the street in Ft. Smith, within two blocks of the courtroom where the trial of the Coronado Coal Company's case was proceeding, the defendant Smith accosted him, charged him with having falsely testified in that case, and knocked him down. Smith testified that he told Bohannon that he had testified to a lie, and that he (Smith) knew that Bohannon had testified in the case, that he knew the trial was still proceeding, but that he did not know that Bohannon was going to testify again, that he thought he was through when he testified the first time, and that he was not trying to influence his testimony any way afterwards at all. Asked, "What was your purpose in stopping him there in front of the Western Union and asking him why he had sworn to a lie?" he answered, "I just wanted to find out what kind of a man he was, whether he was a man desirable or not."

[1] Counsel for the defendant Smith argue that this testimony shows that there was no substantial evidence of any intention on his part to impede or intimidate Bohannon as a witness, but that the object, intent, and cause of the assault and beating were a past event, Bohannon's first testimony. But Smith knew that Bohannon had testified and had gone home. Smith testified that he was mad on account of that testimony. He found Bohannon back in Ft. Smith, within two blocks of the courtroom where evidence was still being introduced in the Coronado Coal Company's case, and he knocked him

down. If he had struck him hard enough, the blow would have impeded him more; but it had a certain tendency to influence and intimidate him from again testifying. It was in the nature of a warning, at least, that if he testified again he might be struck again. The natural and inevitable consequence of an act may be considered in deducing the intention of the actor, and the argument that there was no substantial evidence in this case to warrant a jury in finding that Smith intended to influence, intimidate, or impede Bohannon from again testifying in the Coronado Coal Company's case in which Smith was one of the defendants, fails to convince.

[2] The second complaint is in effect that the court refused to charge that Bohannon, after he had first testified under subpœna, had been paid his fee, had been discharged, had been called to testify again by a telegram from one of the attorneys for the plaintiffs, who had originally subpœnaed him, and had returned in response to that call to Ft. Smith to testify in rebuttal, was not a witness in the case still on trial, although he again testified therein on the next day under the second call. The argument is that Bohannon was not under subpœna, or other order or direction of the court, and might lawfully have refused to come on the telegraphic call to the court, or might have departed therefrom, and therefore he was not a witness in the court, within the meaning of section 135 of the Criminal Code. But the decisive question here is not the duty or liability of one as a witness, but the duty and liability of one charged with endeavoring by the means specified in the statute to influence, intimidate, or impede a witness. The purpose of Congress in enacting this statute was not to charge witnesses with duty or liability, but to protect them and the administration of justice from corruptly threatening and intimidating acts by third persons.

Many, probably a majority, of all the witnesses who testify in courts of justice, do so without the service of a subpœna or other order of the court, pursuant to the request of the parties to the litigation or to the promptings of interest. They, however, are not less witnesses than those who testify under subpœnas. The corrupt threatening or forceful influencing or intimidation of witnesses who testify without subpœnas is not less pernicious than that of witnesses under orders of the court, and a construction which would limit the protection of this section to the latter class of witnesses is too narrow and unreasonable. The terms of the statute, the evil it was enacted to prevent, and the protection it was intended to provide, leave no doubt that under its true interpretation each of those who are subpœnaed to come, of those who are called and accept the call to come without subpœnas, of those who are prompted to come by their interests, of those who expect to come, and of those who are selected and expected to come to testify in any case in any court of the United States, falls within the class described by the terms "any witness, in any court of the United States," in the section under consideration. State v. Keyes, 8 Vt. 57, 30 Am. Dec. 450; State v. Tisdale, 41 La. Ann. 338, 6 South. 579, 580; State v. Horner, 1 Marv. (Del.) 504, 26 Atl. 73, 74, 41 Atl. 139; Montgomery v. Palmer, 100 Mich. 436, 59 N. W. 148, 150; In re Brule (D. C.) 71 Fed. 943, 945.

Under the testimony in this case Bohannon was a witness in the Coronado Coal Company's case when he was assaulted and beaten by the defendant, and there was no error of law in the trial of this case.

Let the judgment below be affirmed.