## KLOSS v. UNITED STATES.

### No. 10155.

Circuit Court of Appeals, Eighth Circuit.
May 7, 1935.

Edward Patterson, of Clarksville, Ark., and Fadjo Cravens, of Fort Smith, Ark., for appellant.

Clinton R. Barry, U. S. Atty., of Fort Smith, Ark. (Duke Frederick and John E. Harris, Asst. U. S. Attys., both of Fort Smith, Ark., on the brief), for the United States.

Before STONE, SANBORN, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Appellant was convicted of a misdemeanor for that he had violated the provisions of section 241, 18 USCA, and was sentenced to jail and to pay a fine. From this judgment and sentence he has appealed.

In the view we take of the case, the only errors relied on by appellant for reversal which warrant discussion are: (a) That the evidence is not sufficient to warrant the conviction of appellant; (b) that the trial court erred in permitting the appellee to exercise more than three, to wit, five peremptory challenges of jurors out of the trial panel; (c) that the court erred in refusing to charge the jury that appellant could not be convicted unless he actually knew at the time of the alleged assault that there was a case pending against him in the federal court; and (d) that the court erred in refusing certain charges requested by the appellant.

▮ The evidence adduced on the trial showed the guilt of appellant conclusively. The fact of the assault was not denied. Appellant did not testify as a witness for himself. He merely sought by the one witness to the assault whom he called to show self-defense. Prior to the assault, and on the day preceding, the appellant had told the prosecuting witness not to go before the grand jury at Fort Smith and testify as a witness against the appellant. The witness, however, disregarded the suggestion and did appear and testify. On the day following, appellant, having learned from a local city officer that the witness had been to Fort Smith to testify, made three several visits to the place of business of the witness on the day of the assault, but failed to find the witness till late in the afternoon. Upon seeing the witness, appellant accosted him profanely and inquired if he had been to Fort Smith, or, as he framed the inquiry, "up yonder." Being told by the witness that he had, appellant inquired why he went. The witness told appellant he had been subpœnaed and exhibited a subpœna to appellant who read it, and said to the witness that he had told him not to go. The witness admitted the fact, but insisted that he had been compelled to go because of the subpœna. Thereupon appellant gave profane voice to a fast increasing mental urge to dislocate sundry of the witness' cervical vertebræ. To this seeming end he got out of his car and assaulted the witness. And the fight began. Appellant had on the same day, but prior to the assault, been indicted for a felony and the charge was yet pending.

▮ During the selection of the trial jury the appellee had made four peremptory challenges, without objection from appellant. Appellee then challenged a fifth juror, who at the request of the court left the jury box; thereupon appellant objected and excepted for that, since the charge is only a misdemeanor, but three peremptory challenges were permitted to the government, whereas, it took five.

The fifth peremptory challenge by the government was of course unwarranted. But rather clearly it must have occurred through an inadvertence shared by both the court and all counsel in the case. This however, will not save the error, if there were one, since the matter was yet capable of correction at the time it was called to the attention of the trial court. The record does not show that it was inadvertent; this statement is found in the brief of the appellee. It may well be that such a view may logically account for the occurrence of the thing in the trial for a mere misdemeanor. But absent any record touching inadvertency, even with it, but this we need not rule—it was the duty of appellant to object to the fourth challenge by the government. Since he did not do so, he waived the point. He could not sit silently by and take advantage of the government's challenge of jurors, whom perhaps appellant did not want and then be heard to object only when the government challenged a juror whom appellant did want.

▮ Moreover, the courts have uniformly said that the right of a defendant in picking a trial jury is bottomed not on selection, but on rejection. United States v. Marchant, 12 Wheat. 480, 6 L. Ed. 700. No defendant has the right to have any particular juror or jurors on the trial panel. Cain v. United States (C. C. A.) 19 F.(2d) 472, loc. cit. 475. His sole right to reject or object ends when a fair and impartial panel has been chosen. It is nowhere contended by appellant that the jury which tried him was unfair, partial, or prejudiced. Pointer v. United States, 151 U. S. 396, 412, 14 S. Ct. 410, 38 L. Ed. 208. And if it

had been, as to component members, he could by exercising his peremptory challenges, which he did not exhaust, have thus rid himself of those to whom he objected. Sawyer v. United States, 202 U. S. 150, 26 S. Ct. 575, 50 L. Ed. 972, 6 Ann. Cas. 269; Connecticut Mutual Life Ins. Co. v. Hillmon, 188 U. S. 208, 23 S. Ct. 294, 47 L. Ed. 446; Krause v. United States (C. C. A.) 147 F. 442; Simpson v. United States (C. C. A.) 184 F. 817; Richards v. United States (C. C. A.) 175 F. 911; United Mine Workers v. Coronado Coal Co. (C. C. A.) 258 F. 829; Tierney v. United States (C. C. A.) 280 F. 322. It is persuasive, though not controlling, that the rule in Arkansas seems in accord. Rose v. State, 178 Ark. 980, 13 S.W.(2d) 25.

So, we think the error urged must be disallowed, upon the grounds indicated, first, that appellant waived it, by failing to raise it, when it first occurred, and, second, because he had no vested right to have any particular juror on the trial panel; since, a fair and impartial panel being conceded, his sole right was that of rejection, which, his challenges not having been exhausted, was still open to him before the jury was sworn.

■ The point made that the charge of the court should have required the jury to find, before they could convict appellant, that the latter knew, at the time he assaulted the witness, that an indictment had been found against appellant and was at such time actually pending, is urged by appellant with much insistence.

While the statute nowhere expressly mentions the necessity for such knowledge, or any knowledge, it is yet by its terms such a statute as requires knowledge on defendant's part to be charged in the indictment, touching the fact *that the person assaulted is a witness in a pending case,* and so the courts have held. Genna v. United States (C. C. A.) 293 F. 387; Pettibone v. United States, 148 U. S. 197, 13 S. Ct. 542, 546, 37 L. Ed. 419. But we have found no case which requires the jury to find the existence of actual knowledge by a defendant of such fact as contradistinguished from "reasonable grounds to believe," as in effect, the trial court charged.

In the Pettibone Case, supra, the court said, on the point of the necessity that the accused should have knowledge of the pendency of proceedings in court, this: "The construction that applies to the first branch of section 5399 must be applied to the second, and if it were essential that the person accused should know that the witness or officer was a witness or officer, in order to conviction of the charge of influencing, intimidating, or impeding such witness or officer in the discharge of his duty, so it must be necessary for the accused to have knowledge or notice or information of the pendency of proceedings in the United States court, or the progress of the administration of justice therein, before he can be found guilty of obstructing or impending, or endeavoring to obstruct or impede, the same."

Clearly, the Supreme Court held in mind that notice was all that was required, and notice is not so strong a requirement as knowledge. No case which we have been able to find, or which has been unearthed by the diligence of counsel, sets out categorically the quantum of proof requisite to show either knowledge or notice.

The point does not occur to us as being wholly analogous to the knowledge required to be proved in a charge of transporting a stolen automobile in interstate commerce; for the reason that in the latter case, knowledge of the fact of recent theft of the automobile is the very gist of the offense, while in the case at bar it is the intimidation of the witness, which constitutes the prime constituent of the offense. Concededly, the person criminally dealt with must be a witness [Smith v. United States (C. C. A.) 274 F. 351], at the time of the intimidation; and the intimidation must be because of such status, but to require proof that a defendant had actual knowledge, for example that an indictment had been found against him and was pending, would in many cases render enforcement of the statute an impossibility. The statute is necessary, and day by day becoming more so, and we do not think it should be emasculated, if not wholly destroyed, by requiring a degree of proof wellnigh impossible. If the accused has reasonable grounds for belief that a case is pending and that one, whom he deals with in the teeth of the statute, is or is going to be a witness in such case, and then uses force to intimidate such witness in an effort, and with the intent to affect such witness' testimony, that should be all that is necessary. So, conceding that one should not be convicted, unless when acting he knew the person dealt with is, or is going to be a witness in a pending case, we think the matter of required knowledge may be shown by proof of reasonable grounds for such knowledge. Of course, such grounds

should appear beyond reasonable doubt. We disallow the contention that the charge on the point was error.

Some of the proffered charges, offered by appellant and refused, could well have been given. But we think all of them, after all, only stated in the negative, what had already by the court been sufficiently stated in the affirmative. To an intelligent jury, it ought to be unnecessary, after having said in effect, "that before you can find the defendant guilty you must find beyond a reasonable doubt that he assaulted the witness, because he was, or was about to be a witness in a pending case and in order to intimidate such witness," and then to go further and say, "however, if you find the assault was made for wholly personal reasons, wholly disassociated from the fact that the person assaulted was a witness, then you should find defendant not guilty."

The statute was designed to protect witnesses. If it shall afford no protection between appearances as a witness, that is, after one appearance, and pending another, or even before appearance by a potential witness, then the way is wide open for intimidation; for a witness can as effectually be intimidated by the fear of assault, if he testifies, or for having testified, as he can, by being assaulted before he has testified.

We have examined other assignments of error, but find no sufficient merit in them to warrant either discussion or reversal.

It results that the judgment should be affirmed, which accordingly we order.