## WALKER v. UNITED STATES.

### No. 10862.

Circuit Court of Appeals, Eighth Circuit.

Jan. 4, 1938.

SANBORN, Circuit Judge, dissenting.

See, also, United States v. Buck, 18 F. Supp. 213; Id., 18 F.Supp. 827; U. S. v. Walker, 19 F.Supp. 969.

I. J. Ringolsky, William G. Boatright, Harry L. Jacobs, Ludwick Graves, James Daleo, Ringolsky, Boatright & Jacobs, and Johnson, Lucas, Landon, Graves & Fane, all of Kansas City, Mo., for appellant.

Maurice M. Milligan, U. S. Atty., Randall Wilson, Sam C. Blair, Thomas A. Costolow, and Richard K. Phelps, Asst. U. S. Attys., all of Kansas City, Mo.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Upon the second count of an indictment charging appellant with violation of section 135 of the Criminal Code, 18 U.S.C. § 241, 18 U.S.C.A. § 241, he was tried and convicted. From such conviction he appeals. The statute upon which the indictment is based provides that "Whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate,

or impede any witness, in any court of the United States" shall be fined or imprisoned.

The second count of the indictment upon which appellant was convicted charges: "And the grand jurors aforesaid, upon their oaths aforesaid, do further present and charge that on or about the 10th day of January, 1937, at Kansas City, Jackson County, Missouri, * . * * one Edson M. Walker, with a corrupt intent, wilfully, unlawfully, knowingly and corruptly then and there did endeavor to influence one Chloe G. Albright, who was then and there a witness in a certain criminal case then pending in the District Court of the United States in and for the Western District of Missouri, entitled United States of America v. Edson M. Walker, Miss Loretta McEntee, Mrs. Anna V. O'Laughlin, Mrs. Chloe G. Albright, Elijah Burke, Mrs. Tessie Mears, and John H. Drummond, wherein the persons last aforesaid were charged by an indictment duly and legally returned by the grand jury of the District Court of the United States in and for the Western District of Missouri, with a violation of section 51, title 18, U.S.C.A. (Criminal Code, § 19), and which said indictment was then on file in said Court and numbered on the records of said Court, Number 13,648, to refuse to tell the whole truth regarding her knowledge of the commission of the offense charged in and by the indictment aforesaid, and charged to have been committed by the persons last aforesaid, and to deny that she had made a statement to the Special Agents of the Federal Bureau of Investigation, Department of Justice of the United States, which was a statement of her knowledge of the commission of the offense charged in and by the indictment aforesaid, and to commit, upon her part, wilful and corrupt perjury in violation of section 231, Title 18, U.S.C.A. (Criminal Code, § 125), before and in the Court aforesaid, when the case aforesaid should be . called for trial and tried therein; the said Edson M. Walker then and there well and fully knowing that Chloe G. Albright aforesaid then and there was and intended to be a witness in said case for and on behalf of the United States of America before and in said Court when said case should be called for trial and tried in said Court. * * "

It will be observed that appellant Walker and Chloe G. Albright, whom it is charged appellant corruptly endeavored to influ-ence, were codefendants in case No. 13648, referred to in the indictment. That case was one of several involving certain alleged election frauds at the November, 1936, election in Kansas City, Mo. The defendants were election officials in one of the voting precincts in that city, and the indictment charged among other things that they did not count the ballots and make a correct return of the results, but instead certified to a false return to the Board of Election Commissioners. Their conduct had been under investigation by the grand jury for some time, when on the evening of January 9, 1937, the newspapers reported that an indictment had been returned, charging all the defendants with violation of section 19 of the Criminal Code, 18 U.S.C.A. § 51.

Upon the trial of the present case, Chloe G. Albright was the principal witness for the government. She testified in essential part as follows:

"I next saw Defendant Walker the evening of January 9, which was a Saturday, at my home, 6423 East 13th Street, Kansas City, Missouri. He came to my house. I had a conversation with him, a few words.

"Q. What did he say to you? A. He came in and he says 'Have you saw the paper, tonight's paper?' I said 'No, I haven't.' 'Well,' he said, 'we are all indicted.' I said 'What do you mean, we are all indicted?' 'Well,' he said, 'we are all indicted in the election, over the election,' and I yet said 'What do you mean that we are indicted.' 'Well,' he said 'We have got to go down and post bond, give bond,' and I said, 'When?' and he did not make any definite statement as to when, and he said to me, 'Has the Government men been out to see you?' I said 'They have.' He said 'What did you tell him.' I said 'I told them just exactly what happened election day.' He said 'You told him the ballots were not counted?' 'Yes, sir,' I said 'I told them they were not counted.' Well, he said 'If it ever comes up to trial or court you deny it.' Well, I said 'I can't, I done told it and I am going to stick by it, there is nothing else I can do but tell the truth.' He said 'Did you sign anything?' I said 'No, sir.' I first told him it would be perjury if I changed my statement and I knew it. He said 'Did you sign something?' and I said 'No, sir,' and he said 'It isn't perjury unless it is a sworn statement, signed' and I

said 'I still can't change my testimony, my story at all' and as he was leaving he said to me 'There is no use for you to worry,' he said 'There is plenty of legal talent and the bonds will be all furnished free.'

"Q. Now, with reference to this statement he made about your testimony did he make any reference to where this testimony was to be given or anything as to where it was to be,—where this testimony was to be? A. He said to court. Of course I knew in my own mind it would be the grand jury. * * *

"I next saw Defendant Walker the next evening, which was Sunday evening, at my home. * * *

"Well, he still said he wanted me to change my story, he wanted my story like they wanted me to tell it, not as I told the Government man at all. * * *

"I said to him 'Well, Walker, I can't change my story, it is still perjury and I know it and I can't change my story at all.' Well, he said 'There isn't nothing to fear,' he says 'If you go ahead and tell as we want you to tell,' he says 'There is nothing for you to fear.' * * *

"I asked him, I said 'Just what would happen if I go ahead and tell the truth of what happened down there, what will happen'. He said, 'oh, nothing will happen in preference only we all will ignore you' and I didn't ask him who 'we all' were. * * *

"As he started out the door he said 'now, we all want to get the same story', he said 'we all want to tell the same story if it comes to court we want to get together and get the same story and you girls,' meaning myself for one, he said 'abide by the way we do, we want you to, and everything will be all right.'"

Upon this evidence, corroborated by the testimony of other witnesses, the verdict and judgment appealed from rest.

Four propositions are relied upon to secure a reversal: (1) The insufficiency of the indictment, in that its allegations are vague and indefinite; (2) the petit jury was not properly selected; (3) a motion for a directed verdict should have been sustained for insufficiency of evidence; and (4) the court's charge to the jury was erroneous, argumentative, and prejudicial.

■ The first ground of appeal, that the indictment is vague and indefinite, is without merit. Appellant does not contend that the statement of the elements of the offense is lacking; but he argues that the allegations are so indefinite that they do not sufficiently apprise him and the court of the nature of the offense so as to relieve him of the danger of a second prosecution for the same acts. A reading of the indictment should be sufficient to dispose of this criticism. This case is unlike the cases relied upon by appellant. He cites United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588, where the defendants were charged with conspiring "to injure, oppress, threaten, and intimidate citizens" without any statement of what those acts of oppression were; United States v. Hess, 124 U.S. 483, 8 S.Ct. 571, 573, 31 L.Ed. 516, in which the defendant was charged with "having devised a scheme to defraud" without any statement of what the scheme was; and Fontana v. United States, 8 Cir., 262 F. 283, where a defendant was accused under the Espionage Act, 50 U.S.C.A. § 33, of disloyal statements, without any identification of the time, place, occasion, or circumstances by which defendant could identify the remarks. None of the essentials found to be omitted in these cases is lacking in the present indictment. An indictment very similar to the one in the present case was held to be sufficient in Davey v. United States, 7 Cir., 208 F. 237. This court's unwillingness to reverse a conviction for lack of certainty in the indictment was indicated in Smith v. United States, 8 Cir., 83 F.2d 631. See, also, Horn v. United States, 8 Cir., 182 F. 721, and Corbett v. United States, 8 Cir., 89 F.2d 124.

The second contention on appeal is a challenge to the petit jury panel on the ground that the names included therein were not lawfully selected. The facts in connection with this point and the legal propositions involved are identical with the facts and contentions in Walker et al. v. United States, 8 Cir., 93 F.2d 383, decided at this term, as well as in several other cases known as the Kansas City, Mo., election cases. This case upon this point is governed by the same principles of law and is controlled by the decisions in those cases. The alleged errors cannot be sustained.

■ The third ground upon which appellant seeks a reversal of the judgment against him must be sustained. It is that the evidence is insufficient to support the verdict.

First, the burden was upon the government to prove that Chloe G. Albright at the time it is claimed appellant corruptly endeavored to influence her testimony on January 9 and 10, 1937, "was and intended to be a witness in said case (No. 13648) for and on behalf of the United States," when that case should come to trial in the District Court of the United States, within the meaning of section 135 of the Criminal Code, 18 U.S.C.A. § 241. It was not necessary to prove that she had been subpoenaed. She was such a witness if she then intended to testify on the trial of the case then pending in the District Court. Smith v. United States, 8 Cir., 274 F. 351, 353. There is no evidence that she so intended. Counsel for the government say that the fact that the evidence shows that she had been interviewed by a government investigator and that she had told him that the ballots had not been counted on election day supports the inference that she intended to testify. But under the circumstances of this case, such an inference is not warranted. She did not say she would testify. The government investigator did not ask her to testify. At that time she could not be required to testify against herself or for the government, 20 Stat. 30, 28 U.S.C.A. § 632, and there is no evidence that at that time she had waived this immunity or that she had any intention of doing so. There is no evidence that the government desired to use her as a witness, even if she should waive her immunity. At that time she had not been arraigned; she had entered no plea, and had not signified what her plea would be. It is suggested in the briefs that she did enter a plea of not guilty which she afterwards changed to nolo contendere at the commencement of the trial of the election case, but we find nothing in the bill of exceptions in this case to support these statements. If they be true, no retroactive inferences can be drawn from them nor from the fact that she did testify for the government. There is nothing in the record to indicate that at the time appellant visited Mrs. Albright she desired or intended to be a witness, or that the government had or would request her to testify, and there was no presumption that she, under these circumstances, would be a witness.

To show that Mrs. Albright entertained an intent in January, 1937, to testify, counsel for appellee must and do rely upon her conversations with appellant.

We find no circumstance disclosed in the evidence of those conversations to support an inference of intent. In the case of Smith v. United States, 8 Cir., 274 F. 351, supra, the witness, Bohannon, whom the defendant had endeavored to intimidate, had testified under subpoena, had been paid his fee, had been discharged, had been called to testify again by a telegram from one of the attorneys who had originally subpoenaed him, and had returned in response to the telegram, when the defendant accosted him within two blocks of the courthouse, accused him of having testified falsely, and knocked him down. No corresponding circumstances are found in the evidence in this case.

Second, the burden was upon the government not only to prove that Chloe G. Albright was or intended to be a witness at the time of the conversations in evidence, but, also, that the appellant then and there had knowledge or notice or information of that fact, and that it was because of such status that appellant corruptly endeavored to influence her. Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419; Smith v. United States, supra; Kloss v. United States, 8 Cir., 77 F.2d 462, 464. It was held in the Kloss Case, supra, that the proof of knowledge is sufficient when it shows that the accused had "reasonable grounds to believe" that the person sought to be influenced is a witness. There is no evidence that Walker knew on January 9 and 10 that she was or intended to be a witness. The only evidence of what appellant knew or had reason to believe about Mrs. Albright's intentions at that time is what she told him. Nothing that she told him indicated that she intended to waive her immunity by requesting permission to testify, or even to enter a plea of nolo contendere, or to ask for a severance. The only references to trials or courts in the conversations were made by appellant.

It may be observed that it is not a crime under section 135 of the Criminal Code, 18 U.S.C.A. § 241, for one jointly indicted with others and charged with conspiracy to consult with his codefendants after the indictment has been returned. The courts should be reluctant to interfere or to make such consultation hazardous by stretching the statute to cover cases not clearly within its purview.

Since there is no evidence in the record to support either element of the bur-

den resting upon the government it must be held that the evidence is insufficient to support the verdict, and that it was error to overrule appellant's motion for an instructed verdict at the close of all the evidence.

In the last five specifications of error appellant assails particular portions of the court's charge to the jury, and the charge as a whole, as unfair to appellant and argumentative. No exceptions were taken to the rules of law embodied in the instructions. We have read and considered the instructions in the light of appellant's criticisms, and we find no reversible error in them. Appellant relies upon the case of Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321, to sustain his contentions. The conviction was reversed in that case because the trial court in his charge to the jury said of the defendant's testimony: "I think that every single word that man said, except when he agreed with the government's testimony, was a lie." Nothing said by the court in his charge in the instant case was comparable to such language.

For the reason that the evidence is insufficient to support the verdict the judgment is reversed and the case remanded with instructions to grant a new trial.

Reversed.

SANBORN, Circuit Judge (dissenting).

If I had presided at the trial of this case I would not have directed a verdict in favor of Walker, the appellant, on the ground that there was no evidence that he knew or had reasonable grounds to believe that Mrs. Albright was and intended to be a witness in the case of United States v. Walker, Albright, and others, D.C. No. 13648, upon the trial of which she subsequently testified as a witness for the government. The conversation which Walker had with Mrs. Albright after the return of the indictment in that case, as she relates that conversation, indicates that the only purpose which Walker could have had was to persuade her to testify falsely upon the trial. He was told by her that she had given to the prosecution a statement of facts which tended to establish the existence of the conspiracy charged in that indictment. He knew that she was a person who could testify against him and the other defendants, including herself, although she could not be compelled to testify. He knew that she in her statement had virtually admitted her own guilt of the charges made, and had thereby indicated her willingness to tell the truth. He knew, or at least had reasonable grounds to believe, that she would have nothing to lose and everything to gain by testifying for the government and telling the truth. That Walker attempted to induce her to testify falsely in court is shown by the following question asked her by Walker's counsel upon cross-examination and by her answer thereto: "Q. Now, so we will have it clearly, you testify this morning that he told you to, in court, say that this statement that you had made to the Government man was not true? A. Yes, sir."

Why should Walker, if he did not know and had no reason to believe that Mrs. Albright intended to be a witness, take the trouble to tell her what to testify to in court?

The purpose of section 135 of the Criminal Code, section 241, tit. 18, U.S.C., 18 U.S.C.A. § 241, is to afford protection to witnesses in the courts of the United States, Kloss v. United States, 8 Cir., 77 F.2d 462, 465, and to guard them against corrupt influence, threats, intimidation, and violence. Codefendants who intend to testify as witnesses in criminal cases are as much entitled to this protection as other witnesses, and are usually in greater need of it.

The rule that a penal statute is to be strictly construed in favor of a person accused is not violated by allowing the language of the statute to have its full meaning where that construction supports the policy and purposes of the enactment. Wilson v. United States, 8 Cir., 77 F.2d 236 (certiorari denied, 295 U.S. 759, 55 S.Ct. 926, 79 L.Ed. 1701) and cases cited. In Smith v. United States, 8 Cir., 274 F. 351, 353, this court, speaking of section 135, said: "The terms of the statute, the evil it was enacted to prevent, and the protection it was intended to provide, leave no doubt that under its true interpretation each of those who are subpœnaed to come, of those who are called and accept the call to come without subpœnas, of those who are prompted to come by their interests, of those who expect to come, and of those who are selected and expected to come to testify in any case in any court of the United States, falls within the class described by the terms 'any witness, in any court of the

United States,' in the section under consideration."

I concede, of course, that a defendant in preparing his defense in a criminal case is at perfect liberty to interview and consult with all of his codefendants and with all material witnesses, whether they are friendly or hostile to him. He may not, however, in my judgment, attempt to influence, by threats or otherwise, any witness, whether a codefendant or not, to testify falsely upon a trial, without violating both the spirit and the language of the statute under consideration.

I am convinced that if the jury believed Mrs. Albright's testimony as to her conversation with Walker, it was justified in finding that he had reasonable grounds to believe and did believe, at the time he talked to her, that she intended to be, expected to be, and was prompted by self-interest to be, a witness against him and his codefendants. I am therefore of the opinion that the trial court could not have directed a verdict for Walker, but was obliged to submit the case to the jury for its determination, and that that determination is binding upon this court. I think the judgment should be affirmed.