Louis **BERRA**, Appellant,

v.

**UNITED STATES** of America, Appellee (two cases).

Nos. 15214, 15215.

United States Court of Appeals Eighth Circuit.

April 22, 1955.

**592**

Stanley M. Rosenblum, St. Louis, Mo., (Mark M. Hennelly, St. Louis, Mo., on the brief), for appellant.

Charles H. Rehm, Asst. U. S. Atty., St. Louis, Mo., and William K. Stanard, II, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

Appellant was convicted in No. 15,214, on both counts of a two-count indictment charging him with corruptly endeavoring to influence a witness before a grand jury and obstruct, influence and impede the due administration of justice, in violation of Title 18 U.S.C.A. § 1503. He was also convicted in No. 15,215 on all counts of an indictment charging income tax evasion for the years 1951, 1952 and 1953, in violation of Title 26 U.S.C.A. § 145(b). The two cases were consolidated for the jury trial, a verdict of guilty resulting in both cases. Appellant was sentenced to four years imprisonment on each of the three counts in No. 15,215, the sentences on all counts to run concurrently. In No. 15,214, the court suspended imposition of sentence and placed appellant on probation for five years, said probation to begin and run consecutively with the term of imprisonment imposed in No. 15,215, and with the special condition that appellant shall not, during the period of probation, hold any office in a labor union or labor organization. The motion for judgment of acquittal or in the alternative for a new trial having been overruled, appellant brought this appeal.

The first point urged by appellant is that the trial court erred in overruling his motion for judgment of acquittal on the income tax evasion counts in No. 15,215 for the reason that the monies allegedly constituting income to appellant were, under the government's own proof, funds embezzled from his employer and therefore did not constitute taxable income to him. Appellant also assigns as error the trial court's failure to give his requested instructions to that effect.

The evidence on the trial below, which was not in dispute except as noted hereinafter, showed that during the years 1951, 1952 and 1953, appellant was the business manager[1] of the St. Louis Labor Health Institute, a non-profit organization furnishing free medical aid to members of Teamsters' Local 688, A. F. of L., and their families. The Labor Health Institute is operated on funds collected from employers who maintain collective bargaining agreements with Local 688. Appellant was authorized, as business manager of the Labor Health Institute, to approve payment of bills incurred by the organiza-

---

1. Although appellant was officially business manager only until September, 1952, he performed the same duties for the remainder of 1952 and during 1953.

tion and to draw and sign checks therefor. The checks were required to be countersigned by another employee. In 1949 the Labor Health Institute contracted with J. Shulman and Sons Contracting Company for extensive alteration work on its premises in St. Louis. The general contractor subcontracted the painting work to one John Schmidt. In 1950, after the original painting contract was completed, Schmidt was called back by the Labor Health Institute for further work. It was at this time, Schmidt testified, that appellant approached him with a plan whereby he, Schmidt, would submit padded bills to the Labor Health Institute by overstating his amount of labor performed, appellant would approve the bills and issue payment to Schmidt, and then Schmidt would return the amount of overpayment to appellant. Schmidt testified, and the government introduced some of his checks in substantiation, that he paid over to appellant some $5,000 under this arrangement during the three years covered by the indictment. He testified that he deducted these payments as commissions in computing his own income tax returns. During these same three years he testified that he did approximately $2,500 to $3,000 worth of painting at appellant's home which he charged to and received payment for from the Labor Health Institute. The evidence also showed that in 1951 a subcontractor purchased materials for and performed labor at appellant's home for which he was paid some $1,500 by J. Shulman and Sons Contracting Company, who in turn billed and received payment of that amount from the Labor Health Institute. These amounts constituted the alleged unreported income received by appellant during the three years in question.

Appellant took the stand in his own behalf and did not deny receiving the money Schmidt claimed to have paid him. He insisted, however, that these payments were loans and that he had later partially repaid Schmidt. He further testified that he had never requested Schmidt to submit padded labor bills to the Labor Health Institute or that there had ever been any such arrangement between the two. With respect to the $1,500 collected by J. Shulman and Sons Contracting Company from the Labor Health Institute for material furnished and labor performed at appellant's home, he testified that he never requested Labor Health Institute be billed for that, and had no knowledge of the fact that it was so billed. Al Shulman testified that the erroneous billing was the fault of his company, not appellant, and that as a result of the grand jury investigation appellant paid him for the work and materials and he repaid the Labor Health Institute.

Appellant does not here contend that the jury was not warranted, under the evidence presented, in finding that the monies paid over to him by Schmidt were not loans. His position, as previously stated, is that all of the unreported funds received during the years in question were embezzled from his employer Labor Health Institute and therefore, under the decision of the Supreme Court in Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, did not constitute taxable income to him.

The Supreme Court, however, in its later decision in Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833, expressly limited its holding in the Wilcox case to the facts there existing. And we do not think the facts in the present case bring it within the scope of the Wilcox decision. The prosecution proved, and the appellant admitted, that the monies he received came, not from his employer Labor Health Institute, but from Schmidt. That this was not a case of embezzlement was recognized by the trial court when, in ruling on appellant's motion for bail, it said:

"Under neither the Government's theory nor that of the defendant can the receipt of the funds by defendant be embezzlement. Generally speaking, embezzlement is the receipt by an agent, such as defendant, of money of his principal, and conversion of the funds to his own use.

The funds must be received in the course of the employment or defendant be rightfully in possession of them and thereafter convert them to his own use. Admittedly, the funds in this case went first to Schmidt. He manifestly obtained them by fraud and deceit. He never was lawfully entitled to them. Schmidt in some instances put the funds in his bank account. None of the funds came into defendant's possession lawfully or in the course of his employment. Defendant may be guilty of obtaining money of the welfare organization by a fraudulent scheme or device, but he could not be convicted of embezzlement."

We agree.

■■ From the record as a whole we are convinced that the monies received by appellant from Schmidt constituted taxable income under the test laid down in the Rutkin case, supra, and followed by this court in Marienfeld v. United States, 8 Cir., 214 F.2d 632, 636: "'An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it.'" That appellant had such control over the funds received from Schmidt cannot be doubted on this record. The trial court was not in error, therefore, in overruling appellant's motion for judgment of acquittal or in refusing to give his requested instructions pertaining to the embezzlement theory.

It is next argued that the trial court committed prejudicial error in unduly restricting cross-examination of Schmidt, the principal witness for the government. On direct examination Schmidt testified that at appellant's insistence he had destroyed his check stubs, cancelled checks, and daily work sheets reflecting his payments to appellant, but did not destroy his cancelled checks of 1952 and 1953 reflecting such payments. The government introduced in evidence the working papers of Schmidt's 1951 income tax return to prove his claimed pay-offs to appellant in that year. On cross-examination appellant sought to discredit the witness by introducing in evidence a check of the Labor Health Institute in the amount of $1160.60, dated February 9, 1951, and made payable to Schmidt, which did not appear on his 1951 income tax working papers. Appellant also introduced, without objection, a photostatic copy of Schmidt's 1951 income tax return which also apparently did not include the $1160.60 check. When appellant attempted to cross-examine Schmidt on the correctness of his 1952 and 1953 income tax returns, however, the trial court sustained the government's objection that the matter was irrelevant and collateral to the issues being tried. Appellant offered to prove that Schmidt had omitted certain items of income in his 1952 and 1953 tax returns and that by reason thereof the witness was biased, prejudiced, and interested; that he was under income tax investigation; and that the destruction of his records inured to his own benefit.

■■ The scope of cross-examination is within the judicial discretion of the trial court. Myres v. U. S., 8 Cir., 174 F.2d 329; Holmes v. U. S., 8 Cir., 134 F.2d 125; Hewitt v. U. S., 8 Cir., 110 F.2d 1. We are not prepared to say the trial court abused its discretion in this case. Schmidt had testified on direct examination that he was not under investigation for income tax evasion and that no promises had been made to him in respect thereto. This was fully explored on cross-examination. Schmidt had also testified that the payments made to appellant were credited as commissions on his tax returns and his 1951 income tax working papers showed that they had been so credited. In sustaining the objection to questioning concerning the correctness of Schmidt's 1952 and 1953 income tax returns, the court ruled:

"You may go into the subject as to whether or not he included in his return these payments which he claimed he put on to the bills of the Labor Health Institute and gave the money to the defendant. Now, he said in his direct examination that

he showed on his income tax return, he showed a credit, paying them to the defendant. That is the extent of your inquiry."

To have permitted further questioning as to other items of Schmidt's income tax returns would have the tendency of confusing the issue before the jury. The appellant, not witness Schmidt, was on trial charged with evading taxes and appellant's income tax returns were the only ones pertinent to the issue. Further, inquiry along this line would have served to unreasonably prolong the trial, another proper consideration before the court in making its ruling. We hold that no abuse of discretion has been shown on the part of the trial court in limiting cross-examination of the witness Schmidt.

■ Appellant also complains that the prosecution was permitted to put appellant's character in issue in its case in chief. An excerpt from the record is set out to show how this alleged error occurred:

"Q. (Witness Schmidt was asked when appellant requested him to destroy his records). A. Well, he was constantly after me to ask me why I kept that daily work sheet, and I told him I kept that for my records. He constantly told me to get rid of them or, oh, I remember very closely after Mr. Berra was arrested, why he called me up, and that was on George Washington's birthday, the 22nd of February.

"Q. Now, will you tell the jury what the conversation was with Mr. Berra on George Washington's Birthday? A. He called me up and asked me—(At this point the court called a recess).

After recess.

"The Court: This witness was asked to describe a conversation on the 22nd of February, is that correct? A. That is right.

\* \* \* \* \* \*

"The Court: Just a moment. I understood you to say it was after

the defendant had been arrested. Did you say that? A. No. No. I did say it, but that is not correct.

"The Court: You better clear that up before you get through your case, because that doesn't correspond with the indictment. It is very material.

"Q. Mr. Schmidt, you have mentioned, I believe, before the recess, something about the defendant's arrest, that has nothing to do with this case, or with this indictment at all?

"A. None whatsoever."

This is the extent of the testimony upon which prejudicial error is predicated. It clearly appears that the witness Schmidt, a layman unversed in judicial rules of evidence, inadvertently and innocently referred to an arrest of appellant in attempting to fix the time of a certain event. There is not the slightest intimation that the fact of appellant's prior arrest was mentioned intentionally, maliciously, or at the prompting of the prosecuting attorney. It was simply such an immaterial incident as can and does sometimes occur during a trial. The incident is closely analogous to one that occurred in the case of Means v. United States, 62 App.D.C. 118, 65 F.2d 206, 207, where a prosecution witness testified that defendant had told her he had been in prison. The appellate court, in holding the admission of this evidence was not error, said: "It is plain that this statement was not brought into the evidence for the purpose of reflecting upon appellant's reputation or character, but was purely incidental to the testimony relating to the conversation between the witness and appellant, which necessarily disclosed the fact that appellant at one time had been an inmate in the Atlanta Penitentiary." Appellant here, in seeking a reversal of this case, relies on United States v. James, 2 Cir., 208 F.2d 124, wherein the court held that the admission in evidence in the government's case in chief of defendant's prior arrest was reversible error. But in that case the testimony concerning defendant's prior arrest came from the lips of a gov-

ernment narcotics officer, who, it may be assumed, was more familiar with courtroom rules of evidence than was witness Schmidt in the present case. Admittedly, this distinction is a thin one, and to the extent that the holding in the James case may be inconsistent with our decision herein, we do not apply it. Under the circumstances disclosed in the record here, the admission into evidence of the testimony concerning appellant's prior arrest did not constitute prejudicial error.

■ Appellant next assigns error on the failure of the trial court to sustain his motion for judgment of acquittal on Count One in No. 15,214, the obstruction of justice indictment. Appellant contends that the evidence of the government was insufficient as a matter of law to prove that Schmidt was, during the time alleged in Count One of the indictment, a "witness" within the intendment of section 1503, 18 U.S.C.A. Count One of the indictment charged, and the government's evidence showed, that appellant's endeavors to influence Schmidt to destroy his records pertaining to Labor Health Institute transactions were made during the period of February 21–23, 1954. Schmidt testified that it was almost a month later, on March 18, 1954, that he first met the revenue agents who were conducting the investigation of the Labor Health Institute. And it was almost a month thereafter, on April 14, 1954, that Schmidt was subpoenaed and testified before the grand jury. Although the offense charged in Count One allegedly occurred on February 21–23, 1954, Schmidt testified: "I didn't even know on March 18 [1954] that I was going to have to testify. I had never told anybody on March 18th that I wanted to testify. I didn't tell anybody anything. I didn't express any desire to testify or March 18th."

The question of who is a "witness" within the scope and meaning of section 1503 has been before this court. In Smith v. United States, 8 Cir., 274 F. 351, 353, the person defendant was charged with endeavoring to influence had testified in a case, was discharged and returned home, and had been requested to return for further testimony at the time defendant assaulted him. In disposing of the contention that the person was not under subpoena, and hence was not a "witness" within the meaning of the statute, this court said:

"The terms of the statute, the evil it was enacted to prevent, and the protection it was intended to provide, leave no doubt that under its true interpretation each of those who are subpoenaed to come, of those who are called and accept the call to come without subpoenas, of those who are prompted to come by their interests, of those who expect to come, and of those who are selected and expected to come to testify in any case in any court of the United States, falls within the class described by the terms 'any witness, in any court of the United States,' in the section under consideration."

In Walker v. United States, 8 Cir., 93 F. 2d 792, 795, a case charging defendant with endeavoring to influence the testimony of a co-defendant in a pending action, this court held: "It was not necessary to prove that she [the co-defendant] had been subpoenaed. She was such a witness if she then intended to testify on the trial of the case then pending in the District Court. Smith v. United States, 8 Cir., 274 F. 351, 353. There is no evidence that she so intended. * * * She did not say she would testify. The government investigator did not ask her to testify. * * * There is no evidence that the government desired to use her as a witness, even if she should waive her immunity."

The decision in Walker v. United States, supra, is controlling here. The government adduced no evidence to show that on February 21–23, 1954, Schmidt intended, desired, or expected to testify before the grand jury or that the government had or would request him to testify. On the contrary, Schmidt testified that as late as March 18, 1954, he had no desire, intent, or expectation of testify-

ing. On February 21–23, 1954, the only information Schmidt had concerning the grand jury investigation, as we view the record, was what appellant had told him. This is hardly sufficient to qualify him as a "witness" under the statute.

The government urges that the test is "whether or not the defendant has reasonable grounds to believe that the witness will be called before the grand jury, and whether the witness is so called." Such a test might be applicable in determining whether there was the required knowledge or notice on the part of the defendant to authorize a conviction under the statute. We need not now so decide. But we are cited to no case, and have found none, where such a test was used to determine whether a person was or was not a "witness" as that term is used in section 1503. Odom v. United States, 5 Cir., 116 F.2d 996, 998, relied on and quoted in the government brief, does not, in our opinion, so hold. The quotation from the Odom case that: "The knowledge necessary is not absolute or direct knowledge that Stansbury [the witness] had testified or would testify; but information or a reasonably founded belief thereof is sufficient to make the requisite scienter; he being in fact a witness", quite obviously refers to the knowledge of the defendant, as evidenced by the preceding sentence, "Touching the knowledge of the accused, and their specific intent to deal with Stansbury as a witness, the question is closer." The court had no difficulty in the Odom case in determining that Stansbury was a witness as he had already testified in a case and was intending to return for another scheduled hearing at the time defendant assaulted him.

■ We conclude that the government wholly failed to prove that Schmidt was, at the time alleged in Count One of the indictment in No. 15,214, a "witness" within the meaning of section 1503 and that appellant's motion for judgment of acquittal on that count should have been granted. Since appellant was placed on probation for five years on both counts in No. 15,214, our decision on this question becomes important in the event that probation is revoked and appellant brought before the court for sentencing. 18 U.S.C.A. § 3653.

■ Appellant also assigns as error the admission into evidence, for purposes of impeachment, of his prior grand jury testimony wherein he refused to answer certain questions on the grounds that such answers might tend to incriminate him. The refusal to give appellant's requested instruction to the effect that his failure to testify before the grand jury constituted no evidence of his guilt is also urged as error. Although this court has not had occasion to pass upon this precise question, courts which have done so have uniformly held that the admission of such testimony is proper. Viereck v. U. S., 78 U.S.App. D.C. 279, 139 F.2d 847; U. S. v. Klinger, 2 Cir., 136 F.2d 677; U. S. v. Gottfried, 2 Cir., 165 F.2d 360; U. S. v. Groves, 2 Cir., 122 F.2d 87. Also, see and compare the following: Raffel v. U. S., 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (evidence of defendant's failure to testify at first trial held proper); U. S. v. Mortimer, 2 Cir., 118 F.2d 266 (evidence of defendant's failure to appear before grand jury held proper); U. S. v. Buckner, 2 Cir., 108 F.2d 921 (evidence of defendant's refusal to testify before Securities and Exchange Commission held proper); Tomlinson v. U. S., 68 App.D. C. 106, 93 F.2d 652, 114 A.L.R. 1315 (prosecutor's comment upon defendant's failure to testify before grand jury, and upon defendant's explanation thereof, held proper). The rule of law to be drawn from all these cases is that where a defendant elects to take the stand in his own behalf he thereby waives his privilege of immunity and becomes subject to cross-examination and impeachment the same as any other witness. We discern nothing unjust or unfair in this rule. It must be held, therefore, that the admission into evidence of appellant's grand jury testimony was not improper. It was also not error to refuse the requested instruction since the court had made it clear during the trial that

the evidence was being admitted to contradict appellant's position taken on the witness stand.

■ Appellant next contends that the condition imposed in the order of probation in No. 15,214, to-wit, "that during the term of probation the defendant shall not directly or indirectly hold any office in or employment by any organization of labor or any organization affiliated, or sponsored by, a labor union or a labor organization. Such conditions shall not prevent defendant from being a member of any labor organization," was beyond the authority of the sentencing court and ought to be expunged. It seems rather anomalous to us that a person should complain of such an order of probation when it was within the lawful authority of the trial court to have given a sentence of ten years imprisonment and $10,000 fine under the two counts of the indictment. 18 U.S. C.A. § 1503. However that may be, appellant's argument that the condition imposed in the order of probation constituted an unlawful invasion of his right to earn a living is untenable. The trial court was of the opinion that the rehabilitation of appellant would proceed more effectively if he disassociated himself from all union organizational and administrative activity during the period of probation. Under the provisions of 18 U.S.C.A. § 3651, the trial court " * * * may suspend the imposition or execution of sentence and place the defendant on probation for such period [not exceeding five years] and upon such terms and conditions as the court deems best." The granting of probation and the terms and conditions thereof are matters clearly discretionary with the sentencing court. No abuse of discretion has been shown here.

■ Appellant's final contention on this appeal is that the trial court erred in refusing to instruct the jury, on the income tax evasion counts in No. 15,215, that it could find appellant guilty of the lesser offense contained in section 3616 (a), 26 U.S.C.A. This point has been decided adversely to appellant's conten-

tion by this court in Dillon v. United States, 8 Cir., 218 F.2d 97, and we make the same ruling on the point in this case so that appellant's record thereon is preserved.

The judgment and sentence on Count One in No. 15,214 are vacated and the cause of action set forth in that count is dismissed. Judgment and sentence on Count Two of No. 15,214 and Counts One, Two and Three in No. 15,215 are affirmed.