**Charles E. FALK and Max G. Wendell, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 20032.**

United States Court of Appeals Ninth Circuit.

Dec. 27, 1966.

Rehearing Denied Feb. 7, 1967.

Kenneth Foley, Los Angeles, Cal., Herbert W. Yanowitz, San Francisco, Cal., for appellant Falk.

John G. Clancy, San Francisco, Cal., for appellant Wendell.

Manuel L. Real, U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief Crim. Div., Arthur I. Berman, David R. Nissen, John K. Van de Kamp, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES and KOELSCH, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge:

Appellants were defendants below. After a court trial, defendant Falk was convicted of one count of perjury and one count of obstruction of justice, and defendant Wendell was convicted of one count of perjury. Both appealed, contending that the evidence was insufficient to sustain a conviction. The charges arose out of defendants' conduct in the trial of a bank robbery charge against Falk in which he had been acquitted by verdict of the jury.

Under Count VI of the Indictment, Wendell was convicted of perjury in violation of 18 U.S.C. § 1621.[1] The substance of Wendell's testimony[2] was that

---

1. "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States."

2. "Q. Now, at some time during the month of August [1963] did Gene Patterson bring an automobile over to your house?
"A. Yes, sir, it was '50 Plymouth, two-door sedan; a blue one.
"* * *
"Q. Then did he ever pick the car up?
"A. Yes, sir, he come over one morning on—around 10:00, 10:30 and said he wanted to use the car for some bank job. I told him, I said, 'Don't plan on me going with you. I don't want to.' He said, 'No,

in August, 1963, Patterson and Helpman came to his house in Patterson's Chrysler to pick up a Plymouth which Patterson had previously left for a battery charge; that he saw Helpman in Patterson's car, and that Patterson drove the old Plymouth away. The Government's contention is that Wendell was substituting Helpman for Falk in the events related.

The prosecution produced testimony of Patterson, Helpman and one Ballard (who was in jail with Wendell). Patterson testified that prior to the robbery, he left a Plymouth at Wendell's for a battery charge; that on the day of the robbery, he went back with Falk (not Helpman) in the Chrysler to pick up the Plymouth; that he drove away in the Chrysler and Falk drove the Plymouth. Helpman testified that he had never gone with Patterson to Wendell's house in one car to pick up another so that he and Patterson drove away in separate cars. He further testified that Falk asked him to invoke the Fifth Amendment if he should be asked whether he went to Wendell's house on the day of the robbery to pick up a car. Falk told him that Wendell would testify that it was Helpman at his house with Patterson only if Helpman consented. Ballard then testified that at the County Jail during the trial, Wendell told him (Ballard) that he was going to lie by stating it was Helpman rather than Falk who came to his house with Patterson. After testifying, Wendell then told Ballard that he had done so.

Wendell's testimony was material in the robbery trial inasmuch as it cast doubt upon whether Falk or Helpman was Patterson's partner in the robbery which followed the picking up of the Plymouth at Wendell's house. Patterson was an admitted participant in the robbery and testified for the Government.

■ Wendell urges that neither Patterson nor Helpman testified that they had never gone together to Wendell's house in August to pick up a Plymouth and that there was, therefore, no direct testimony contradicting Wendell's allegedly perjurious testimony at the robbery trial. We do not so view the evidence. The problem for the trier of fact was whether all witnesses were talking about the same incident, and there was ample evidence in the record from which he could conclude beyond a reasonable doubt that they were. The mere fact that Wendell, in his testimony at the robbery trial, did not fix the morning of August 20, 1963 (the day of the robbery) as the date of the incident does not exonerate him from liability for perjury. The District Court having concluded that all parties were testifying about the same incident, Patterson was a direct witness in contradiction of Wendell's oath that it was Helpman, not Falk, who accompanied Patterson to Wendell's house to pick up the Plymouth, and the testimony of Helpman and Ballard was ample corroboration of the perjury under the strictest view of the requirements of proof in such cases. Radomsky v. United States, 180 F.2d 781 (9 CCA 1950); Arena v. United States, 226 F.2d 227 (9 CCA 1955); Umbriaco v. United States, 258 F.2d 625 (9 CCA 1958).

■ In Count VI of the Indictment, defendant Falk and another, Robert W.

I got a friend here with me. We will take the car and take it away.'

"Q. He said that to you where, in the house?

"A. I was standing in the doorway of my house.

"Q. Did you see the person who was with him?

"A. Yes, sir.

" * * *

"Q. Were you at that time acquainted with a Chet Helpman?

"A. Chet was the one that was with him that day. * * *

"Q. Where was he? Was he in the car?

"A. He was in Gene's car.

"Q. And did they take the car?

"A. Gene drove the car away, yes sir.

" * * *

"Q. Mr. Patterson drove which car away?

"A. The '50 Plymouth.

"Q. What car did they come in?

"A. They came in, oh, about a '55 Chrysler, blue and white Chrysler * * *."

Stanley, were charged with suborning the perjury of Wendell. The trial court dismissed the charge as to Falk on the ground of collateral estoppel, and found Stanley not guilty. Wendell argues that the collateral estoppel as to Falk should redound to his benefit. Wendell was not, however, a party to the robbery prosecution and we have found no support for the astonishing contention that all witnesses in a successful defense of a criminal prosecution are immunized from subsequent charges of perjury under the doctrine of collateral estoppel. We decline so to hold, and this without comment on whether or not the District Judge was unnecessarily cautious in bringing collateral estoppel to Falk's defense under Count VI.

Defendant Falk was found guilty under Count IX of the Indictment charging him with a violation of 18 U.S.C. § 1503.[3]

The Indictment read as follows:

"On or about February 12, 1954, in Los Angeles County, within the Central Division of the Southern District of California, defendants Charles Edward Falk, Jr., and Robert W. Stanley, *corruptly influenced, obstructed, impeded, and endeavored to influence, obstruct and impede the due administration of justice* by corruptly endeavoring to influence, intimidate and impede and by influencing, intimidating, and impeding Clara Belle Miller and Ronald Lee Miller, prospective witnesses before the United States District Court for the Southern District of California, Central Division, in the case of United States v. Charles Edward Falk, Jr., * * * in connection with testimony that Clara Belle Miller and Ronald Lee Miller would give before said Court in violation of 18 United States Code, Section 1503." [Emphasis added.]

The record of the trial shows that Falk attempted to induce both Ronald Miller and Clara Miller to give false testimony in the robbery trial so as to provide an alibi. Neither of the Millers, in fact, testified. At the time of Falk's attempts, neither of the Millers was under subpoena nor had any intention of testifying.

In fact, defendant's activities constituted an attempt to suborn perjury. There is no federal statute proscribing such conduct; nor is there any general federal "attempt" statute. The Indictment was therefore brought under the obstruction of justice statute.

Appellant urges this Court to find that the prosecution did not sufficiently prove the Millers to be "witnesses" within the holding of Walker v. United States, 93 F.2d 792 (8th Cir. 1938). *Walker* was concerned with a prosecution under 18 U.S.C. § 241 (the predecessor of 18 U.S.C. § 1503). The Court there held that to sustain a conviction, it must be shown that at the time of the alleged inducement, those induced were either witnesses or intended to be

3. *Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness,* in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, *or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice,* shall be fined not more than $5,000 or imprisoned not more than five years, or both." (Emphasis added.)

476

witnesses, and that the defendant's knowledge of such facts led him to approach the witness.

The *Walker* decision is not applicable to the charge in this Indictment. In *Walker*, the Court was concerned with the first portion of Section 1503: "Whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any *witness*, in any court of the United States * * *." [Emphasis added.] The Court there was concerned with interpretation of the word "witness". In the instant situation, the Indictment was brought under a different portion of 18 U.S.C. § 1503, which provides punishment for whoever "corruptly * * * endeavors to influence, obstruct, or impede, the due administration of justice * * *."

This latter language of Section 1503 is a broad "catch-all" phrase in the statute. In United States v. Solow, 138 F. Supp. 812 (S.D.N.Y.), the Court found a violation when the defendant prevented the production of four letters before the grand jury. After distinguishing the different divisions of Section 1503, the Court further stated:

"But there is a further portion of the statute, an omnibus provision, directed towards 'whoever * * * corruptly * * * obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice * * *.' This latter provision * * * is all-embracing and designed to meet any corrupt conduct in an endeavor to obstruct or interfere with the due administration of justice."

"The obstruction of justice statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined." Catrino v. United States, 176 F.2d 884 (9th Cir. 1949). Following *Catrino*, it has been held: "Any corrupt endeavor to influence any party or witness, whether successful or not, constitutes obstruction of justice prohibited by said section. See Catrino v. United States, 9 Cir., 1949, 176 F.2d 884. The obstruction of justice statute is broad enough to cover the attempted corruption of a prospective witness in a civil action in a Federal District Court. Here the evidence discloses that appellant corruptly endeavored to influence, obstruct and impede the due administration of justice in his attempt to induce Mrs. Dutcher to give false testimony at the trial. Wilder v. United States, 4 Cir., 1906, 143 F. 433." Roberts v. United States, 239 F.2d 467 (9th Cir. 1956). See also: United States v. Cohen, 202 F.Supp. 587 (D.Conn.).

In the case before this Court, the defendant Falk was not charged with influencing a "witness" within the first provision of Section 1503. Falk was charged with endeavoring to influence, obstruct or impede the due administration of justice. The means of so doing was by attempting to corruptly influence prospective witnesses. It is clear that in the mind of the defendant, they were prospective witnesses. If he had thought otherwise, there would have been no reason to ask the Millers to testify falsely. So, while the term "witness" may be a word of art in an indictment under the first portion of Section 1503, the phrase "prospective witnesses" is descriptive only of the intended status of Mr. and Mrs. Miller when the Indictment charges obstruction of justice. The conviction under Count IX is affirmed.

■ Defendant Falk was also found guilty of perjury under Count II of the Indictment. Inasmuch as he was sentenced to a term of five years' imprisonment under both Count II and Count IX, the sentences to run concurrently, and the conviction under Count IX has been affirmed, we need not consider the assignments of error with respect to Count II. Byrnes v. United States, 327 F.2d 825 (9 CCA 1964); Winger v. United States, 233 F.2d 440 (9 CCA 1956).